**S.W. DANIEL, INC., a Georgia Corporation, By and Through its President Sylvia DANIEL, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 87–8007.**

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1987.

Daniel Kane, Atlanta, Ga., Scott McLarty, Athens, Ga., for plaintiff-appellant.

Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Roger M. Olsen, Asst. Atty. Gen., David English Carmack, Nancy G. Morgan, Washington, D.C., for defendant-appellee.

Before HILL and VANCE, Circuit Judges, and SPELLMAN *, District Judge.

HILL, Circuit Judge:

S.W. Daniel, Inc. a manufacturer of firearms, brought this action against the Internal Revenue Service (hereinafter "IRS") claiming entitlement to a refund of excise taxes paid on SSMII–AI's. At trial S.W. Daniel, Inc., claimed that the IRS had improperly classified the 168 single-shot weapons as "machine guns", and that as a result the Service had inappropriately levied $400 in taxes per gun.[1]

26 U.S.C. § 5845 defines a machine gun broadly, including in its description: (1) "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reload, by a single function of the trigger" [26 U.S.C. § 5845(b)]; (2) "the frame or receiver of any such weapon" (*id.*); (3) "any combination of parts designed and intended for use in converting a weapon into a machine gun" (*id.*); and (4) "any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person." *Id.* Discussion at the trial centered on the latter three tenets of the definition, and ultimately focussed on the fourth segment of the section 5845(b) definition.

In this appeal S.W. Daniels, Inc., takes issue with the jury instructions given in the district court. In the charge to the jury the district judge cited almost verbatim section 5845(b), and then added: "[t]he law also defines as machine guns those weapons which have not previously functioned as machine guns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts." 3SR–45–6.[2]

S.W. Daniels, Inc., maintains that this addition to the instruction improperly expanded the scope of section 5845(b). Furthermore, appellant takes issue with the instruction because it parallels an unofficial "opinion ruling" promulgated by the Bureau of Alcohol, Tobacco and Firearms (BATF). Bureau of Alcohol, Tobacco, and Firearms, 2 *Quarterly Bulletin* 49 (1982).

As for appellant's first contention, we find that the definition given by the district judge falls within the ambit of section 5845(b). Assume, for example, that parts A, B, and C are needed to make a machine gun. If parts A, B, C and D are provided in a single-shot weapon, and D can be eliminated from the gun, then that single-shot gun clearly contains "any combination of parts from which a machine gun can be assembled" [26 U.S.C. § 5845(b)], and all of those parts "are in the possession or under the control of a person." *Id.* Similarly, if that single-shot firearm contains parts A, B, and E, and a simple modification of part E can transform it into part C, then once again all the essential components from which a machine gun *"can be* assembled" [26 U.S.C. § 5845(b)] (emphasis supplied) are in the possession of the one person who holds the single-shot weapon.[3]

---

* Honorable Eugene P. Spellman, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The IRS levied a $200 tax on the transfer of the SSMII–AI's (26 U.S.C. § 5811), and a $200 tax on the manufacture of the guns. 26 U.S.C. § 5821. The Service assessed an additional $8691.82 in interest and penalties.

2. Appellant directs the court's attention to this segment of the instruction because during the jury deliberations the jury returned with a question about the meaning of the term "facilitate",

and because the jury's opinion included its determination that conversion of the SSMII–AI "would only be done in extreme cases and by skilled individuals." 3SR–56–7. As to the latter, this court finds that the frequency or likelihood of conversion is irrelevant under the fourth definition in section 5845(b).

3. At trial, appellant did not object to the instruction when given, but when as a result of a question from the jury the judge gave the instruction again, finally did object. The United States argues that the objection came too late, and cites numerous cases rigorously enforcing

Because the district court's definition fit squarely within the parameters of section 5845(b), we need not address the similarity of the judge's charge and the BATF opinion. For the reasons explained above, the opinion of the district court is

AFFIRMED.

Rule 51 of the Federal Rules of Civil Procedure. *See e.g., G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945, 953 (5th Cir. Feb. 1981); *Dreiling v. General Electric Co.,* 511 F.2d 768, 776 n. 9 (5th Cir.1975). Appellant counters with a reference to *Palmer v. Miller,* 145 F.2d 926 (8th Cir.1944), in which the Eighth Circuit declared it would allow new objections when the "jury is given additional instructions or the court has the instructions which were given read to the jury." *Id.* at 930. This court notes that the decision in *Ostapenko v. American Bridge Division of United States Steel Corp.,* 267 F.2d 204 (2d Cir.1959) seemingly conflicts with the Eighth Circuit's determination in *Palmer.* Cf. *J.T. Gibbons v. Crawford Fitting Co.,* 704 F.2d 787 (5th Cir.1983). However, because we find the district court's jury instruction rephrased the statutory definition without perceptibly altering its meaning, we need not resolve the question of the timeliness of an objection made during the recharging of a jury.