## THOMPSON/CENTER ARMS COMPANY, A DIVISION OF THE K.W. THOMPSON TOOL COMPANY, INC.

### v.

**James A. BAKER III, Secretary of the Treasury, Stephen E. Higgins, Director, Bureau of Alcohol, Tobacco and Firearms.**

### Civ. No. 87–260–D.

United States District Court, D. New Hampshire.

April 29, 1988.

Steven Gordon, Concord, N.H., Stephen P. Halbrook, Fairfax, Va., for plaintiff.

Gretchen Leah Witt, Asst. U.S. Atty., Concord, N.H., for defendants.

### ORDER

DEVINE, Chief Judge.

Plaintiff Thompson/Center Arms Company ("TCA"), a firearms manufacturer, seeks a declaratory judgment that possession of a Contender pistol in conjunction with a Contender Carbine Kit does not constitute possession of a "firearm" under 26 U.S.C. § 5845(a) or a "short-barreled rifle" as defined by 18 U.S.C. § 921(a)(8). Jurisdiction is asserted under Article III, section 2 of the United States Constitution, 28 U.S. C. §§ 1331 and 1337.

Defendants have moved for dismissal pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R.Civ.P. Defendants assert that (1) the United States has not waived its sovereign immunity in this case; (2) this action is essentially a tax matter and is therefore barred by the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Anti–Injunction Act, 26 U.S.C. § 7421(a); and (3) plaintiff lacks standing

to bring the action. The Court, having considered the memoranda and exhibits of the parties, finds that the issues are capable of resolution on the documents as filed, Rule 11(g), Rules of the United States District Court for the District of New Hampshire, and therefore denies plaintiff's request for a hearing.

*Factual Background*

TCA is a sporting arms manufacturer and holds a federal firearms license. Complaint ¶ 2. It manufactures a single-shot pistol, called the "Contender", which is designed for hunting, target shooting, and other sporting purposes. *Id.* ¶ 6. For a brief period of time in 1985, TCA manufactured and sold a "Contender Carbine Kit" consisting of a 21–inch barrel, a shoulder stock, and a fore-end. The kit was designed and intended to be added to the frame or receiver of a Contender pistol to make a rifle. *Id.* ¶ 7.

Apparently, in the summer of 1985 plaintiff met with members of the Bureau of Alcohol, Tobacco and Firearms ("ATF") to discuss the legal status of the Contender Carbine Kit. In a September 5, 1985, letter to TCA, defendant Stephen Higgins, Director of ATF, interpreted 26 U.S.C. § 5845(a)(3)–(4)[1] to mean that the Contender pistol and carbine kit possessed together constitute a "firearm" under the National Firearms Act (NFA), 26 U.S.C. § 5801, *et seq.*

The NFA imposes various requirements on manufacturers and dealers of firearms. These persons must pay a special occupational tax of up to $500. 26 U.S.C. § 5801. They must also pay a $200 tax on the making and a $200 tax on the transfer of a firearm. 26 U.S.C. §§ 5811, 5821; 27 C.F. R. §§ 179.61, 179.82 (1987). In order to make or transfer a firearm, the dealer or manufacturer must file a written application with the Secretary of the Treasury, accompanied by the appropriate tax, and must obtain the Secretary's approval. 26 U.S.C. §§ 5812, 5822; 27 C.F.R. §§ 179.62,

---

1. In relevant part, 26 U.S.C. § 5845 defines a "firearm" as: "(3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length."

179.84 (1987). Weapons characterized as firearms under the NFA are also subject to registration requirements. 26 U.S.C. § 5841. A failure to comply with the NFA may subject the dealer to criminal penalties. 26 U.S.C. § 5861.

Essentially, Mr. Higgins' letter reflected ATF's concern that the rifle stock could be wrongfully attached to the pistol receiver with the short pistol barrel. However, the letter does not limit the application of the firearms definition to such a constructed weapon, but instead specifically notes that "if the barrel of less than 16 inches in length were not attached to the weapon and shoulder stock, the combination would still be subject to the provision of the NFA if the short barrel, stock and firearms were in the possession of the person." Complaint, Exhibit D. Defendant Higgins' interpretation presumably would also render TCA's Contender a "short-barreled rifle" under 18 U.S.C. § 921(a)(8),[2] subjecting the plaintiff to possible criminal sanctions under Title 1 of the Gun Control Act, 18 U.S.C. §§ 921, *et seq.*[3]

In a September 12, 1985, letter, TCA requested that ATF reconsider its position. Complaint, Exhibit E. In response, the Deputy Assistant Secretary of ATF, Edward Stevenson, reiterated the Bureau's position that the Contender pistol and kit, held together, are subject to the NFA, but that "a complete pistol and complete rifle do not constitute an NFA weapon unless a short-barreled rifle is actually assembled from the parts." *Id.*, Exhibit F (letter of October 9, 1985). Thus, the plaintiff may sell Contender pistols and rifles as completed guns, but may not sell a conversion kit without subjecting the weapon to the NFA.

After receiving ATF's letters, plaintiff stopped manufacturing the Contender Carbine Kit and has not resumed its manufacture. Plaintiff claims that ATF's interpretation not only has made it economically unfeasible for TCA to market and manufacture the Carbine Kit, but also will subject TCA to criminal prosecution if it continues to market the kit without a determination that it is not a firearm. Plaintiff also claims to have suffered past economic harm.

*Discussion*

■ The Court initially considers defendants' alleged sovereign immunity. The United States, its agencies, and its officers are immune from suit unless the United States consents to the suit. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). A plaintiff has the burden to establish that such a waiver of sovereign immunity exists. *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir.1983), *cert. denied sub nom. Holloman v. Clark*, 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984). The Court finds that TCA has met its burden to show that the United States has waived its sovereign immunity under 28 U.S.C. § 1331 by way of 5 U.S.C. § 702.

In a case directly on point, the Sixth Circuit Court of Appeals held that 5 U.S.C. § 702 waives the sovereign immunity defense in actions for nonmonetary relief brought under 28 U.S.C. § 1331. *Warin v. Director, Dept. of Treasury*, 672 F.2d 590 (6th Cir.1982). The plaintiff in *Warin* sought a declaratory judgment that a spring-driven device he had designed was not a firearm. In rejecting defendant's claim of sovereign immunity, the court found the legislative history of section 702 to be "unambiguous".[4] *Id.* at 592. The

---

**2.** 18 U.S.C. § 921(a)(8) defines a "short barreled rifle" as "a rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches."

**3.** Section 922(a)(4) provides that it is unlawful "for any person, other than a licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate commerce ... [a] short-

barreled rifle, except as specifically authorized by the Secretary consistent with public safety and necessity." Subsection (b)(4) states it is unlawful for a licensed individual to sell or deliver "to any person any ... short-barreled rifle, except as specifically authorized by the Secretary consistent with public safety and necessity."

**4.** The legislative history states:
The purpose of this bill is best summarized by stating that it would remove three techni-

First Circuit has also adopted the position that 5 U.S.C. § 702 operates as a waiver of sovereign immunity in nonmonetary actions brought under 28 U.S.C. § 1331. *See Massachusetts v. Departmental Grant Appeals Bd.*, 815 F.2d 778, 781 (1st Cir. 1987).

In the instant case, plaintiff seeks a declaratory judgment and no monetary damages. Therefore, 5 U.S.C. § 702 waives the Government's sovereign immunity under 28 U.S.C. § 1331, and the Court has jurisdiction.

▮ The Court next considers whether the suit is barred by the declaratory judgment or anti-injunction statutes. Under the Declaratory Judgment Act, this Court may grant relief "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes....*" 28 U.S.C. § 2201. This section neither provides nor denies a basis for federal court jurisdiction, but instead defines the scope of available declaratory relief. *McCarthy v. Marshall*, 723 F.2d 1034, 1037 (1st Cir. 1983). However, the Court's jurisdiction may be limited by the Anti–Injunction Act, 26 U.S.C. § 7421, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax is assessed." The tax exception to the Declaratory Judgment Act is construed at least as broadly as the Anti–Injunction Act. *Id.* (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n. 7, 94 S.Ct. 2038, 2044 n. 7, 40 L.Ed.2d 496 (1974)). Thus, a finding that the plaintiff's claim is barred by the Anti–Injunction Act necessitates a finding that the claim is similarly barred by the Declaratory Judgment Act.

The primary purpose of the Anti–Injunction Act is to protect the "Government's need to assess and collect taxes as expedi-

tiously as possible with a minimum of preenforcement judicial interference 'and to require that the legal right to the disputed sum be determined in a suit for refund.'" *Bob Jones, supra,* 416 U.S. at 736–37, 94 S.Ct. at 2046 (quoting *Enochs v. Williams Packing & Navigation Co,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962)); *see also Chandler v. Perini Power Constructors,* 520 F.Supp. 1152, 1155 (D.N. H.1981). The Supreme Court has allowed parties to bring tax-related claims prior to refund actions only in limited circumstances. If the aggrieved party has no other access to judicial review, the suit is allowed. *See South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1983). Additionally, if a plaintiff can show that the Government could not ultimately prevail in the suit under any circumstances, the action may be brought. *Williams Packing, supra,* 370 U.S. at 7, 82 S.Ct. at 1129.

In determining whether a case falls within the ambit of the Declaratory Judgment and Anti–Injunction Acts, the First Circuit looks to the nature of the claim.

> If it calls in question a specific provision of the Internal Revenue Code, or to a ruling or regulation issued under the Code, the claim would clearly come under the general bars to jurisdiction and declaratory relief at this stage of proceedings. Conversely, if jurisdiction were otherwise established and the controversy concerned essentially nontax matters, there would be no question of dismissing the case merely because a decision on the merits might have some collateral tax repercussions.

*McCarthy, supra,* 723 F.2d at 1037 (citations omitted).

The applicability of the Anti–Injunction Act to suits brought seeking a declaration that a weapon is not a firearm under the NFA has not been determined by any

cal barriers to the consideration on the merits of citizens' complaints against the Federal Government, its agencies or employees. The amendment made to section 702 of title 5 would eliminate the defense of sovereign immunity as to any action in a Federal court seeking relief *other than money damages* and

stating a claim based on the assertion of unlawful official action by an agency or by an officer or employee of the agency....
*Id.* at 592 (citing H.R. No. 94–1656, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News, 6121, 6123) (emphasis added).

court.[5] There is no dispute, however, that the Anti–Injunction Act applies to suits brought to enjoin the collection of excise taxes, *see, e.g., Martin v. Andrews,* 238 F.2d 552 (9th Cir.1956), and that the making and transfer taxes under the NFA are a form of excise tax. *Sonzinsky v. United States,* 300 U.S. 506, 512, 57 S.Ct. 554, 555, 81 L.Ed. 772 (1937). Thus, this litigation calls into question a specific provision of the Internal Revenue Code and rulings and regulations issued thereunder.[6] The issue, then, is whether the "primary purpose" of this litigation is to prevent the assessment and collection of these taxes and to obtain advance assurance of tax advantages. *See McCarthy, supra,* 723 F.2d at 1038. If so, the action is barred by the Anti–Injunction Act in the absence of exceptional circumstances.

TCA asserts that if it were to market the Contender Carbine Kit without a judicial determination of its status as a firearm or short-barreled rifle, it would suffer several types of harm with no tax consequences: for example, TCA would be subject to criminal prosecution, revocation of its firearms license, and forfeiture of its weapons under Title I of the Gun Control Act, which is not a part of the NFA.[7] 18 U.S.C. § 921, *et seq.* Complaint ¶ 18. But in actuality, Title I and the NFA are integrally related, and the potential harms TCA alleges can only result if plaintiff manufactures and sells the kits without paying the appropriate making and transfer taxes.

For example, a licensed dealer may be prosecuted if he sells a short-barreled rifle to any person except as specifically authorized by the Secretary. 18 U.S.C. §§ 922, 923. Such authorization is obtained through compliance with the NFA transfer application process, 27 C.F.R. § 179.98 (1987), under which the dealer is required to submit the appropriate $200 tax, 27 C.F.R. § 179.84 (1987). Thus, a dealer will not be subject to criminal penalties if it pays the appropriate tax and obtains specific authorization from the Secretary.

Plaintiff's own pleadings reveal that this action is essentially a tax matter. *Cf. Bob Jones, supra,* 416 U.S. at 738, 94 S.Ct. at 2046–47. The legal interpretations TCA obtained from ATF only addressed the definition of a firearm under the NFA. *See* Complaint, Exhibits D, E, and F. Additionally, plaintiff acknowledges that ATF's legal interpretation makes it "commercially impossible for TCA to manufacture and market, and for consumers to purchase on an economically feasible basis and without undue red tape ... the Contender Carbine Kit." Complaint ¶ 12. Considering that the retail price of plaintiff's Carbine Conversion Kit was $240 when it was marketed in 1985, *id.,* Exhibit B, it is obvious that the greatest hindrance to economic feasibility would be the imposition of $400 in making and transfer taxes on the sale of the kit. The fact that plaintiff and its customers would also be subject to registration requirements does not alter the essential nature of this action as an action to restrain tax collection. "Every tax is in some mea-

---

5. Two courts have considered the merits of actions brought to have certain weapons declared not to be firearms under the NFA. *York v. Secretary of the Treasury,* 774 F.2d 417 (10th Cir.1985); *R.P.B. Ind., Inc., v. Secretary of the Treasury,* No. 82–1149A, (N.D.Ga. July 21, 1982). However, neither case considered the applicability of the Anti–Injunction Act and thus cannot stand for the proposition that the Act does not apply. Although *R.P.B. Ind.* makes reference to some unidentified jurisdictional objection raised by the defendant, the court stated that the jurisdictional question was "pretermitted" before ruling for the Government on the merits. *R.P.B. Ind., supra,* slip op. at 6.

6. The NFA is a part of the Internal Revenue Code (IRC), and its provisions are set forth in

Title 26 of the United States Code, which is the codification of the IRC.

7. Plaintiff also asserts that it has suffered past economic harm, i.e., that in reliance on a 1971 letter from ATF, *see* Complaint, Exhibit C, TCA expended sums of money to manufacture and market the Carbine Kit in 1985 and was required to supply purchasers with extra receivers at a discount to guarantee they were not in violation of the law. However, this action for declaratory judgment cannot provide plaintiff with compensation for economic damages and therefore the alleged harm could not be addressed in this action. *See supra* note 4 and accompanying text. Plaintiff makes no allegation that it is likely to be indicted for the 1985 sales of the Contender kits.

sure regulatory ... [b]ut a tax is not any the less a tax because it has a regulatory effect," even if the tax is burdensome and tends to restrict or suppress the thing taxed. *Sonzinsky, supra,* 300 U.S. at 513, 57 S.Ct. at 555–56.

Plaintiff also asserts that this suit would not restrain the "assessment or collection" of taxes under the Anti–Injunction Act because a tax may not be "assessed" prior to manufacture, and manufacture would subject plaintiff to the aforementioned criminal penalties. Plaintiff's interpretation of the statute is too restrictive. The Act's ban on judicial interference is applicable not only to assessment or collection, but also to activities which are intended to or may culminate in the assessment or collection of taxes. *Dickens v. United States,* 671 F.2d 969, 971 (6th Cir.1982) (citations omitted); *see also Bob Jones, supra,* 416 U.S. at 725, 94 S.Ct. at 2038 (Anti–Injunction Act applies to suit brought prior to tax assessment to enjoin revocation of IRS letter ruling). Therefore, the Court finds that the primary purpose of this litigation is to restrain the assessment and collection of taxes. *McCarthy, supra,* 723 F.2d at 1038.

Plaintiff further asserts that the Act does not apply because it has no alternative means of litigating its claim. *See Regan, supra,* 475 U.S. at 381, 104 S.Ct. at 1115–16. The Court does not agree. The appropriate administrative procedure is for plaintiff to file an application with the Secretary of the Treasury to make the Contender Kit and to pay the appropriate $200 tax. *See* 26 U.S.C. § 5822 and 27 C.F.R. § 179.62 (1987). The plaintiff may then file a claim for refund and thereafter challenge the action in United States District Court. *See*

26 U.S.C. § 7422;[8] 28 U.S.C. § 1346(a)(1); *see also, e.g., S.W. Daniel, Inc. v. United States,* 831 F.2d 253, 254 (11th Cir.1987).

In this case, plaintiff has not followed these procedures. In 1985, TCA obtained what appears to be an informal agency determination of the status of its weapon as a firearm and now seeks judicial review of that determination.

An analogy may be drawn to IRS letter rulings.[9] A taxpayer may request a letter ruling which interprets and applies the tax laws to a specific set of facts. 26 C.F.R. § 601.201(2) (1987). If the taxpayer receives an unfavorable determination which he wants to dispute, he may comply with the ruling and file for a refund, or he may disregard the ruling, inviting litigation by the IRS. 34 Am.Jur.2d *Federal Taxation* ¶ 9254 (1987). But in no case may the taxpayer seek judicial review of the ruling without first pursuing a refund claim. *Id.* ¶ 9302; *see also, e.g., Bob Jones, supra,* 416 U.S. at 730–31, 94 S.Ct. at 2043; 26 U.S.C. § 7422.

Although TCA is not free to disregard ATF's determination and make the kit without paying the appropriate taxes because, as plaintiff points out, to do so would invite criminal prosecution, TCA may apply for approval to make the kit, pay the appropriate tax, and claim a refund. The availability of this option precludes plaintiff from bringing this action.

Finally, plaintiff argues that the Anti–Injunction Act does not apply because the United States could not, under any circumstances, ultimately prevail in this suit. *See Bob Jones, supra,* 416 U.S. at 748–49, 94

---

8. § 7422. Civil actions for refund
  (a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, ... or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary,....
  (b) Protest or duress.—Such suit or proceeding may be maintained whether or not such tax, penalty or sum has been paid under protest or duress.

9. In drawing this analogy, the Court makes no finding as to the status of the Government's letters to plaintiff which characterize the Contender weapons as "firearms". An ATF regulation comparable to the letter ruling provision provides that anyone in doubt as to the status of their weapon as a firearm may request an ATF ruling and that all such rulings will be published in the ATF Bulletin. 26 C.F.R. § 601.328(a). There is no evidence before the Court that plaintiff obtained such an official ruling here. However, the analogy to IRS letter rulings is still apposite.

S.Ct. at 2052 (citing *Enochs, supra,* 370 U.S. at 7, 82 S.Ct. at 1129). Without addressing the merits of plaintiff's arguments, the Court finds that the issues presented are "sufficiently debatable" to allow application of the Act. *Id.*

In sum, the Court finds and rules that the United States has waived its sovereign immunity defense. The Court also finds that the primary purpose of this action is to restrain the assessment and collection of taxes, that the plaintiff has an alternative means of litigating this claim through a suit for refund of the excise taxes, and that the Government may ultimately prevail in the case. Therefore, the Anti–Injunction Act, 26 U.S.C. § 7421, and the tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201, apply to prohibit this action. Consequently, because the Court lacks subject matter jurisdiction over this action, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (document no. 16) must be and herewith is granted.[10]

SO ORDERED.

---

10. Because the Court lacks subject matter jurisdiction based on the application of the Declara- tory Judgment Act and the Anti–Injunction Act, the Court need not address the standing issue.