**THOMPSON/CENTER ARMS COMPANY, A DIVISION OF the K.W. THOMPSON TOOL COMPANY, INC.,** Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 652–88T.

United States Claims Court.

March 23, 1990.

Stephen P. Halbrook, Fairfax, Va., for plaintiff.

Benjamin C. King, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Shirley D. Peterson, for defendant.

## OPINION

MARGOLIS, Judge.

Plaintiff, a firearms manufacturer, claims a $200 tax refund, alleging that the tax was erroneously collected. The special excise tax at issue in this case is levied on the "making" of items statutorily defined as "firearms" under the National Firearms Act (NFA or Act). 26 U.S.C. § 5801 *et seq.*, § 5821. The parties disagree as to whether two of the plaintiff's products— the Contender pistol, possessed in conjunction with the Contender Carbine Kit—together comprise a "firearm" under 26 U.S.C. § 5845(a), which is thus taxable under the NFA. This case is before the court on cross motions for summary judgment. After hearing oral argument and after review of the entire record, this court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## FACTS

Thompson/Center Arms Co., a division of the K.W. Thompson Tool Company, Inc. (TCA), a sporting arms manufacturer, manufactures the Contender pistol, a single shot pistol with a ten-inch barrel and overall length of fourteen inches. The pistol barrel is interchangeable with other barrels made by TCA. The Contender Carbine Kit (kit), manufactured briefly by TCA in 1985, consists of a twenty-one inch barrel, a shoulder stock and a forend. These parts can be attached to the receiver of the Contender pistol to produce a single shot rifle.[1] The manufacturer's shoulder stock, packaging, instructions and advertising included a warning that the use of the shoulder stock with a barrel less than sixteen inches

---

1. The receiver of the pistol, also called the pistol action or frame, is a metal component containing the trigger and hammer to which the barrel and either the pistol grip or the shoulder stock can be attached. The shoulder stock is a wooden support which attaches to the receiver to allow the gun to rest against the shoulder during firing. The forend, a small wooden piece, attaches under and supports the barrel.

in length would violate federal law. The warning was also embossed on the recoil pad of the shoulder stock.

The pistol is converted into a carbine by exchanging the ten-inch barrel for the twenty-one-inch barrel, and replacing the pistol grip with the shoulder stock. All of the necessary parts are contained in the conversion kit. The only tools required are an Allen hex wrench, screwdrivers and a hammer. Although plaintiff asserts that the pistol is not intended to be converted into a short barrel rifle, the parts are completely interchangeable. There is nothing to prevent the consumer from replacing the pistol grip with the shoulder stock, without also substituting the rifle barrel for the pistol barrel. At the request of the court, counsel for the plaintiff did exactly that, creating what all parties concede was a short barrel rifle, a firearm under the NFA.

In 1971, R. Gustafson, president of TCA, wrote to the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service (ATF), requesting an informal opinion on the legality of using the Contender pistol receiver to make a single shot carbine with a barrel eighteen inches long and a full shoulder stock. The reply from Rex Davis, then Acting Director of ATF, stated that "the manufacture of a carbine ... by utilizing a pistol action, would be legal and the firearm so produced would not come within the purview of the NFA." He also made these recommendations:

> [i]n view of the interchangeable barrel capabilities of your Contender action, we believe that it would be in the public interest for you to include a cautionary statement with each firearm. This statement would serve to advise the purchaser that any reduction of the barrel length of the carbine to less than 16 inches, whether by substitution of the carbine barrel with one of your pistol barrels or otherwise, ... would constitute the making of a firearm within the purview of Section 5845(a) of the National Firearms Act.... To preclude the ready conversion of the carbine to a short barreled rifle through the substitution of one of your pistol barrels, you might find it

advisable to vary the receivers used in the carbines in such a way so as to render them incapable of accepting your pistol barrels. We also recommend that the receivers used in the carbines be marked in some way to distinguish them from the receivers used in your pistol.

In 1985, TCA briefly produced the Contender Carbine Kit, including a warning such as the one suggested by Davis. Production was halted when TCA was advised by Stephen Higgins, Director of the Bureau of Alcohol, Tobacco and Firearms (BATF), that the Carbine Kit, possessed in conjunction with the Contender pistol, would constitute a firearm subject to the NFA. Higgins also informed TCA that the possession of a complete pistol and complete carbine would *not* be within the scope of the NFA unless the components were actually assembled as a short barrel rifle.

TCA filed suit in U.S. District Court seeking a declaratory judgment that the Contender pistol and the Contender Carbine Kit did not comprise a "firearm." The court held that it lacked subject matter jurisdiction over the case. *Thompson/Center Arms Co. v. Baker*, 686 F.Supp. 38, 44 (D.N.H.1988). In order for the court to have subject matter jurisdiction, TCA was required to first pay the NFA tax and then sue for a refund. *Id.*

In October 1987, plaintiff submitted an Application to Make and Register a Firearm and paid the $200 tax. The application was approved by BATF in December 1987. TCA then filed a claim for a refund of the tax payment in March 1988, claiming that no short barrel rifle was ever made, but rather that TCA had segregated and possessed as a unit the Contender pistol and the Contender Carbine Kit. TCA claims that because the component parts were never actually assembled as a short barrel rifle, no "firearm" was ever "made." TCA was never notified of the disallowance of the claim, and after more than six months had elapsed, filed this suit.

Plaintiff claims that the Contender pistol and Carbine Kit possessed as a unit and used together do not constitute a firearm

under 26 U.S.C. § 5845(a)(3). Plaintiff therefore asserts that the $200 special excise tax levied on "firearms" was erroneously collected and requests a refund of that tax payment. In its complaint, plaintiff also sought declaratory judgment that the Contender pistol and Carbine Kit when possessed together as a unit did not constitute a short barrel rifle unless actually assembled as such. However, in its opposition to defendant's motion for summary judgment, plaintiff concedes that the declaratory judgment issue is moot, as a judgment on the tax refund claim would provide plaintiff with complete relief. Also, counts two and three of the complaint are not issues in this case.

The government claims that, according to both the statute and relevant case law, the pistol and the Carbine Kit, sold or held as a unit, do constitute a short barrel rifle under 26 U.S.C. § 5845(a)(3), because together they include all of the component parts of a short barrel rifle. The government contends that even though the kit *also* allows the purchaser to make a long barrel rifle (*not* a firearm under the NFA), the pistol plus the kit still constitute a firearm under the NFA. Therefore, the government concludes that the excise tax was properly collected.

## DISCUSSION

This case requires the court to interpret the NFA to determine whether the Contender pistol, possessed in conjunction with the Contender Carbine Kit, meets the statutory definition of a "firearm" under 26 U.S.C. § 5845. The first step in construing a statute is to look to the language of the statute itself. *Greyhound Corporation v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978) (citations omitted). Of particular importance are the definitions expressed within the statutes. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1560 (1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Section 5845 of the Internal Revenue Code, the definitions section of the NFA (as amended by the Firearms Owners' Protection Act of 1986, P.L.

99–308, § 109), reads in pertinent part as follows:

(a) Firearm.—

The term "firearm" means

*  *  *  *  *  *

(3) a rifle having a barrel or barrels of less than 16 inches in length;

*  *  *  *  *  *

(c) Rifle.—

The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

*  *  *  *  *  *

(i) Make.—

The term "make," and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm.

Plaintiff contends that the Contender pistol, possessed in conjunction with the Contender Carbine Kit, does not comprise a firearm because the two products are not, and have never been, assembled as a short barrel rifle. Plaintiff relies on the definition of the term "make" in arguing that the statute requires that the firearm be put together. This overly narrow reading of the statute is not supported by the wording of the statute, the legislative history or the applicable revenue rulings.

█ The statute does not specifically refer to "assembled" rifles, "unassembled" rifles or combinations of parts from which rifles can be made. However, it is clear that Congress intended to include a broad range of combinations within the definition, otherwise more restrictive language would have been used. The phrase "or otherwise producing a firearm" is clearly indicative of Congressional intent to include the broad-

est array of combinations. Proper construction of the statute must be consistent with the obvious intent of Congress. Therefore, this court holds that the definition of the term "make" addresses not only assembled rifles, but also unassembled rifles and complete parts kits from which rifles can be made. This interpretation is amply supported by the legislative history and the revenue rulings.

*Legislative History of the National Firearms Act*

A careful examination of the legislative history of the 1968 amendments to the National Firearms Act reveals that Congress intended to broaden the scope of the definition of "firearms," to bring more types of weapons within the ambit of the Act. H.R. Conf. Rep. No. 1956, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. Code Cong. & Admin.News 4410, 4426, 4434. Plaintiff, however, argues that the amendments expanding coverage as to other weapons actually narrowed the definition of rifles subject to the Act. This court believes that the plaintiff misreads the legislative history.

In 1968, Congress added the following language to the definition of rifle: "and shall include any such weapon which may be readily restored to fire a fixed cartridge." The new language does not limit the definition of "rifle" to those rifles which had already been assembled at some time in the past. On the contrary, the change expanded the coverage of the Act. Application of the basic rules of grammar shows that Congress, in using the conjunctive "and," meant to expand its definition of what constituted a rifle. Congress closed a loophole which would allow one to try to avoid the application of the Act by simply disassembling a single part of the firearm. It is illogical to argue that Congress intended to include as a firearm only weapons which had been *pre*-assembled. *See United States v. Drasen*, 845 F.2d 731, 736 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988). If that were the case, persons could avoid payment of the excise tax by selling firearms partially unassembled. Such an inter-

pretation would subvert the intent of Congress in drafting the amendments to the Act.

It is also not the case, as plaintiff claims, that the expansion of the definitions of machineguns and silencers to include individual parts of those items somehow served to narrow the definition of rifle. It is true that the individual parts of rifles (*e.g.,* the barrel, the receiver, the shoulder stock) are not, in and of themselves firearms, because those parts can be and are used to make guns which are not firearms under the Act. In contrast, machinegun parts are used only to make firearms.

However, the government is not relying on a theory that the individual parts of the Contender pistol and the Contender Carbine Kit are each firearms under the NFA, *i.e.,* the government does not argue that the shoulder stock is itself a firearm. Rather, the government argues that the pistol and the kit *when possessed together* comprise all the requisite parts of a firearm, and therefore are the equivalent of an unassembled short barrel rifle.

*The "Administrative Record"*

■ Plaintiff has provided the court with informal opinion letters from the ATF and its successor agency, BATF. Some of those letters were addressed to TCA, and some were addressed to other companies seeking informal opinions. Plaintiff refers to these letters collectively as "the administrative record." That is somewhat of a misnomer, as those letters do not constitute the "record" of the instant case, which is a *de novo* proceeding for a tax refund, but rather describe the position of the agency in response to particular factual queries. Such letters are non-binding agency opinions. Where there is a conflict between unpublished letter opinions, and the statute and the revenue rulings interpreting that statute, the latter two control, and the letters are entitled to no weight.

Nonetheless, this court agrees with the government that each of the letter opinions is either consistent with the interpretation now urged by the government, or is sufficiently distinguishable on its facts. For

example, the 1971 letter from ATF Acting Director Rex Davis to TCA which states that the use of the Contender pistol action in "making up" a carbine would not be a violation of the NFA, nowhere addressed the issue of a single pistol plus a conversion kit. Rather, the response clearly anticipated the manufacture of a complete Contender carbine using a receiver identical to the one used in making a Contender pistol. Further, that letter anticipated the problem of having weapons whose barrels are fully interchangeable and therefore capable of being assembled as an NFA firearm. That is why Davis included the recommendations set forth in his letter *supra.*

The other letters cited by plaintiff concerned two complete weapons, combinations involving curios or relics, or were otherwise factually distinguishable from the present case. Defendant agrees that the 1973 letter from ATF to another company regarding the manufacture of a "sportsmen's kit" appears to be inconsistent with the agency's current position, but notes that, to the extent a non-binding letter opinion is inconsistent with agency policy, it is "just incorrect." This court agrees with that statement, and finds nothing else in the letter opinions to support plaintiff's position.

### Revenue Rulings

■ Unlike opinion letters, published revenue rulings are given weight, as they represent the agency's official interpretation of the statute. Those rulings show that the agency has consistently held that the possession of a pistol with an attached or attachable shoulder stock constitutes possession of a firearm within the scope of the NFA. *See* Rev.Rul. 61–45, 1961–1, C.B. 663; Rev.Rul. 61–203, 1961–2, C.B. 224. Similarly, Rev.Rul. 54–606, 1954–2, C.B. 33, held that possession of sufficient parts to assemble a firearm constitutes possession of a firearm.[2]

The rulings which plaintiff argues are inconsistent with the government's current

position (Rev.Rul. 59–340, 1959–2, C.B. 375, and Rev.Rul. 59–341, 1959–2, C.B. 376) differ in significant factual ways from the present case. Neither involved a situation in which it was even *possible* to combine the component parts to make a short barrel rifle. Thus, this court finds that the published agency opinions interpreting the NFA are consistent with the government's position that the Contender pistol possessed in conjunction with the Contender Carbine Kit constitute a firearm under the Act.

### Cases Interpreting the Statute

Various courts of appeals have held that unassembled rifles and shotguns are firearms within the § 5845 definition. In 1971, the Seventh Circuit held that an unassembled pistol and holster-shoulder stock were a short barrel rifle because, when assembled, the parts would become a short barrel rifle. *United States v. Zeidman,* 444 F.2d 1051, 1053 (7th Cir.1971). In *United States v. Woods,* the Fifth Circuit held that an unassembled sawed-off shotgun came within the definition of a firearm, because only minimal effort was required to make it functional. 560 F.2d 660, 664–65 (5th Cir. 1977), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1452, 55 L.Ed.2d 497 (1978).

As shown by the plaintiff's own submissions and its demonstration during oral argument, the process of dismantling the Contender pistol and reassembling a Contender carbine takes less than ten minutes, and can be accomplished with simple, readily available tools. Because the barrels are fully interchangeable, a short barrel rifle could be assembled in less than five minutes—even more easily and readily than a long barrel rifle—since the barrels would not have to be changed.

The case most closely analogous to our case is *United States v. Drasen,* 845 F.2d 731. In that case, the defendant sold complete short barrel rifle parts kits. None of the kits was assembled. The court held that the *un*assembled kit is no different

---

**2.** These revenue rulings represent the agency's interpretation of the statute prior to its amendment by the Gun Control Act of 1968. In enacting the Gun Control Act, the Congress specifical-

ly adopted previous agency interpretations in reenacting the definitions section of the statute. *See United States v. Drasen,* 845 F.2d at 736.

than a *dis*assembled rifle, because the parts could be easily assembled into a rifle. *Id.* at 736. Further, the parts of the disassembled rifle and the unassembled rifle were identical and interchangeable. Again, the court did not hold that the individual parts of the rifle were firearms; rather the parts, aggregated together as a *kit,* were the equivalent of a firearm under the NFA. In the present case, Thompson/Center Arms segregated and possessed together all of the component parts of a short barrel rifle, which were capable of being easily and readily assembled into a short barrel rifle. The presence of the additional, interchangeable rifle barrel is of no consequence; the rifle barrel is simply an extra piece. The court concludes that TCA possessed an unassembled short barrel rifle—a firearm under the Act and under the cases construing the Act.

*Intent of the User*

■ Plaintiff argues that there would be no reason for either a sportsman or a criminal to use the Contender Carbine Kit to create a short barrel rifle because, among other things, the resulting weapon would not be accurate, would be inconcealable, and would be slow to reload. However, defendant asserts that the NFA definition of a short barrel rifle includes no intent requirement. If a rifle has a barrel less than sixteen inches long, and is not otherwise excepted (*e.g.*, relics and curios), it is a short barrel rifle. One who makes a short barrel rifle is subject to the special excise tax. That is all. This court need not and will not attempt to delve into the minds of hypothetical gun owners to speculate as to what might motivate them to use the pistol plus the kit to fashion a short barrel rifle. The court need not consider what TCA intended when it sought to market the pistol in conjunction with the carbine kit. The fact that TCA may not have intended that the two products be assembled as a short barrel rifle does not alter the fact that the pistol and the kit together comprise all of the requisite parts of such a weapon.

*Ambiguity of the Statute*

Finally, plaintiff cites *Auto–Ordnance Corp. v. United States* for the proposition that, in a tax refund case, where there is a doubt as to the meaning of a revenue statute, the doubt should be resolved in favor of the taxpayer. 822 F.2d 1566, 1571 (Fed. Cir.1987). Plaintiff correctly points out an important and long-standing canon of tax jurisprudence. However, as discussed above, the pertinent language of the NFA is not ambiguous as applied to the facts of this case. The making of a rifle having a barrel of less than sixteen inches, not otherwise exempted, is subject to the imposition of the excise tax. Thus, the holding of *Auto–Ordnance* has no application to the present case.

■ In reviewing this case, the court has used every tool in its arsenal of legal analysis—rules of statutory construction, examination of pertinent legislative history, review of agency interpretation of the statute, examination of relevant case law, and the application of ordinary common sense. Each of these leads inexorably to conclusion that the Contender pistol in conjunction with the Contender Carbine Kit is a firearm under the National Firearms Act.

## CONCLUSION

Summary judgment is appropriate where, as here, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). Here, the only dispute between TCA and the government is the interpretation of the NFA, which is a matter of law for the court to decide.

For the reasons set forth above, this court concludes that the Contender pistol possessed in conjunction with the Contender Carbine Kit is a short barrel rifle and a firearm under the National Firearms Act. Therefore, the excise tax was properly assessed, and no refund is due to the plaintiff. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied. The Clerk will dismiss the complaint. Each party will bear its own costs.