UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Submitted: January 12, 2011                    Decided: June 20, 2011)

Docket No. 10-1405
_____

UNITED STATES OF AMERICA,
                    *Appellee,*

            v.

SEAN H. GRAVEL,
                    *Defendant-Appellant*.
_____

Before: POOLER, WESLEY and CHIN, *Circuit Judges*.

        Appeal from United States District Court for the District of Vermont (Murtha, *J.*)

sentencing Sean Gravel principally to a term of imprisonment of 45 months following his guilty

plea to possession of a firearm in violation of 18 U.S.C. § 922(j).  The district court imposed a

six-level sentence enhancement after finding that the stolen weapon was a machinegun within

the meaning of 26 U.S.C. § 5845(b).  On appeal, Gravel challenges the decision to impose the

enhancement, arguing that because the weapon's automatic fire feature was disabled at the time

of his theft it no longer qualified as a machinegun, rendering the six-level enhancement

reversible error.  Because the undisputed evidence established that the weapon originally was

designed to fire automatically, we hold that it is a machinegun within the meaning of 26 U.S.C.

§ 5845(b) and affirm the sentence.

        Affirmed.

_____

JOHN C. MABIE, Corum Mabie Cook Prodan Angell & Secrest, PLC, Brattleboro, Vt. *for Defendant-Appellant*.

WILLIAM B. DARROW, Assistant United States Attorney (Tristram J. Coffin, United States Attorney, Gregory L. Waples, Assistant United States Attorney, on the brief), Burlington, Vt., *for Appellee*.

PER CURIAM:

In August, 2008, Sean Gravel stole a Colt M-16A1. The stolen weapon originally was manufactured to fire automatically, but was later modified to shoot semi-automatically. Gravel was charged with, and pleaded guilty to, knowingly possessing a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). **(A9)** The United States District Court for the District of Vermont (Murtha, *J.*) applied a six-level enhancement to Gravel's sentence pursuant to U.S.S.G. § 2K2.1(a)(5), finding that the stolen weapon was both designed to fire automatically and could be readily restored to fire automatically. We agree that because the undisputed evidence established that the weapon at issue originally was designed to shoot automatically, the six-level enhancement set forth in Section 2K2.1(a)(5) applies. Because a finding that the Colt M-16A1 was designed to fire automatically suffices to resolve the issue before us, we do not reach the issue of whether the weapon was readily restorable to automatically fire.

## BACKGROUND

One night in early August 2008, Gravel broke into a locked Vermont State Police cruiser and stole a Colt M-16A1 rifle, along with the rifle's case, six ammunition magazines and several hundred rounds of ammunition. After arrest, Gravel entered a plea of guilty to the indictment's single charge: knowing possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2).

2

At his sentencing hearing, the primary issue in dispute between the parties -- and the only issue on this appeal -- was whether the stolen Colt M-16A1 was a machinegun under U.S.S.G. § 2K2.1(a)(5) and 26 U.S.C. § 5845(b), which would require a six-level sentence enhancement. At the hearing, Supervisory Special Agent James Mostyn of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "Bureau") testified that the Colt M-16A1 at issue "is a machinegun made by Colt in the Vietnam era for the U.S. military. . . . It was initially designed to be an automatic firing weapon." The Vermont State Police acquired a number of Colt M-16A1s from the U.S. military. A three-way switch on the weapon allows the user to choose different firing capacities, Mostyn explained, with "full auto" emptying the entire magazine with one pull of the trigger and "semi-automatic" discharging one round of ammunition with each trigger pull. By removing the weapon's auto sear (a piece of metal located behind the trigger assembly), Mostyn testified, the Colt M-161A weapon could be converted to only shoot semi-automatically. After being acquired by the Vermont State Police, the stolen M-16A1 was converted to semi-automatic fire. Mostyn further testified that the weapon could, with little effort, be converted back to automatic fire by replacing the auto sear.

The district court found that the term "machinegun" as defined in 26 U.S.C. § 5845(a) includes any weapon originally designed by its manufacturer to shoot automatically. Holding that the undisputed testimony established that the M-16A1 was designed to shoot automatically, the district court decided the six-level sentencing enhancement applied to Gravel. Additionally, the district court found that the stolen weapon could be readily restored to automatic fire status, providing an alternative basis for the sentence enhancement. The district court calculated the appropriate Guidelines range as 57- to-71-months' imprisonment, made a downward departure

3

due to Gravel's personal circumstances, and imposed a principal sentence of 45 months'

imprisonment, followed by two years of supervised release.

## DISCUSSION

We review a question of statutory interpretation de novo. *United States v. Gayle*, 342

F.3d 89, 91 (2d Cir. 2003). The only issue on appeal is whether the stolen Colt M-16A1 was a

"machinegun" as defined in 26 U.S.C. § 5845(b), requiring a six-level sentence enhancement

pursuant to U.S.S.G. § 2K2.1(a)(5). Section 5845(b) defines "machinegun" as:

> any weapon which shoots, is designed to shoot, or can be readily
> restored to shoot, automatically more than one shot, without
> manual reloading, by a single function of the trigger. The term
> shall also include the frame or receiver of any such weapon, any
> part designed and intended solely and exclusively, or combination
> of parts designed and intended, for use in converting a weapon into
> a machinegun, and any combination of parts from which a
> machinegun can be assembled if such parts are in the possession or
> under the control of a person.

26 U.S.C. § 5845(b). The issue of what "is designed to shoot . . . automatically more than one

shot" is one of first impression for our Court. Gravel argues that the M-16A1 was "re-designed"

into a semi-automatic weapon, and that because Section 5845 uses the present tense "is

designed," we may consider only the state of the weapon as it existed at the time of his crime.

The government argues that under the plain meaning of the statute, "designed" refers to what the

weapon was originally designed to do, not to post-manufacture modifications.

"A fundamental canon of statutory construction is that, unless otherwise defined, words

will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United

States*, 444 U.S. 37, 42 (1979). The term "designed" is not defined in the statute, so we turn to

other sources to determine its "ordinary, contemporary, common meaning." Webster's Third

4

Int'l Dictionary (1993) defines "design" as to "to conceive and plan out in the mind," "to plan or have in mind as a purpose," and "to devise or propose for a specific function." Similarly, Black's Law Dictionary (6th ed. 1990) defines "design" as "[t]o form plan or scheme of, conceive and arrange in mind, originate mentally, plan out, contrive." The "ordinary, contemporary, common meaning" of design must consider what was contemplated at the time the weapon was being conceived and devised.

We find that the word "designed," when applied to a manufactured object such as a firearm, refers to what the gun was conceived of and designed for, and not to any modifications made afterwards. *See Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004) ("Well-established principles of construction dictate that statutory analysis necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there."). This is consistent with the statutory language further defining "machinegun" as a weapon readily restorable to automatic fire. There would be no need to include a definition taking future modifications into account if the word "design" encompassed post-manufacture modifications.

Here, the gun in question was conceived of, and planned for use as, an automatic weapon. The Vermont State Police removed the auto sear, disabling the weapon's automatic firing function. The evidence indicated that simply replacing the auto sear would reenable the gun's automatic fire capabilities. Thus, while the removal of the auto sear disabled the automatic fire feature, it did not change the fundamental design of the weapon or, as Gravel suggests, "redesign" the weapon into something other than an automatic fire weapon. The weapon still "is designed" to be a machinegun.

Our conclusion is further supported by the Bureau's rulings, which provide that

5

"designed to shoot" under Section 5845 includes weapons that "possess design features which facilitate fully automatic fire by simple modification or elimination of existing component parts." *United States v. TRW Rifle 7.62X51mm Caliber, Model 14*, 447 F.3d 686, 688 n.2 (9th Cir. 2006) (citing ATF Rul. 82-2, 1982-1 A.T.F.Q.B. 18 (1982); ATF Rul. 82-8, 1982-2 A.T.F.Q.B. 49 (1982); ATF Rul. 83-5, 1983-3 A.T.F.Q.B. 35 (1983)); *accord United States v. TRW Model 14, 7.62 Caliber Rifle*, 441 F.3d 416, 420 n. 4 (6th Cir. 2005) (noting that the Bureau's rulings define "the 'designed' prong 'to include weapons which have not previously functioned as machineguns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts'") (citation omitted); *S.W. Daniel, Inc. v. United States*, 831 F.2d 253, 254 (11th Cir. 1987) (approving jury charge stating "'[t]he law also defines as machine guns those weapons which have not previously functioned as machine guns but possess design features which facilitate full automatic fire by simple modification or elimination of existing component parts'") (alteration in the original).

Gravel relies on *F.J. Vollmer Co. v. Magaw*, where the weapon was originally designed as a semi-automatic, was later modified into an automatic, then restored back to a semi-automatic. 102 F.3d 591, 594 (D.C. Cir. 1996). The D.C. Circuit criticized the Bureau's policy of "once-a-machinegun-always-a-machinegun," and rejected the finding that the twice-converted weapon remained a machinegun. *Id.* Critically, however, the weapon at issue in *F.J. Vollmer* was not designed by the manufacturer to fire automatically, but was converted from semi-automatic fire to automatic fire. Here, the Colt M-16A1 was designed by the manufacturer to be an automatic weapon.

Gravel also argues that the statute addresses only a weapon's present capabilities. We

6

disagree. This argument disregards the second sentence of Section 5845(b), which provides that the term "machinegun" includes the "frame or receiver" of an automatic weapon. Agent Mostyn testified that he understood the statute to provide that "[t]he frame or receiver of the weapon [was] a machinegun in itself." Gravel did not challenge this assertion. Moreover, our sister Circuits hold that even an inoperable machinegun is still a "machinegun" within the meaning of the statute. *See, e.g., United States v. Moore*, 919 F.2d 1471, 1475-76 (10th Cir. 1990) (inoperable machinegun still a "machinegun" within the meaning of the statute); *cf United States v. Castillo*, 406 F.3d 806, 817 n.3 (7th Cir. 2005) ("[t]here is no prerequisite that the gun be operable to be a 'firearm' under 18 U.S.C. § 924(c)"). Thus, we with agree the district court that the weapon at issue was a "machinegun" under the "designed" prong of Section 5845(b).

Our finding that the weapon at issue is a machinegun within the meaning of the Section 5845(b) suffices to support the six-level sentence enhancement applied by the district court. We thus need not, and do not, reach the issue of whether the stolen weapon was "readily restorable" within the meaning of the statute.

## CONCLUSION

For the reasons given above, we affirm.

7