**William J. McCARTHY, et al., Plaintiffs, Appellants,**

v.

**F. Ray MARSHALL, Secretary of the United States Department of Labor, et al., Defendants, Appellees.**

No. 83–1189.

United States Court of Appeals, First Circuit.

Argued Sept. 16, 1983.

Decided Dec. 28, 1983.

---

Gabriel O. Dumont, Jr., with whom James T. Grady, and Grady, Dumont & Dwyer, Boston, Mass., were on brief, for plaintiffs, appellants.

Michael J. Roach, Atty., Tax Div., Dept. of Justice, with whom Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, Attys., Tax Div., Dept. of Justice, Washington, D.C., and William F. Weld, U.S. Atty., Boston, Mass., were on brief, for defendants, appellees.

Before BOWNES, Circuit Judge, and ALDRICH and COWEN *, Senior Circuit Judges.

COWEN, Senior Circuit Judge.

Appellants, trustees of the New England Teamsters and Trucking Industry Pension Fund (fund), appeal from an order of the district court which granted the appellee's (government's) motion to dismiss for lack of jurisdiction. Appellants instituted this action seeking a declaration as to the meaning and application of certain sections of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* In particular, they sought a declaration as to the legality of the regulations issued by the Secretary of Labor in 29 C.F.R. § 2530.-200b–2, whereby the Secretary required pension credit to be given for purposes of benefit accrual for hours worked by em-

* Of the Federal Circuit, sitting by designation.

ployees even where no contribution to the fund was made by employers. At issue in this appeal is whether the district court properly concluded that it lacked jurisdiction to consider appellants' action due to the applicability of the so-called federal tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201. Appellants contend that (1) Congress did not intend actions such as theirs to be barred under the tax exception, or (2) that notwithstanding the tax implications of the action, the government could under no circumstances prevail on the merits. For the reasons to be set forth, we affirm the judgment of the district court.

## I.

At the heart of this litigation is the question whether the New England Teamsters and Trucking Industry Plan (plan) must credit employees, for purposes of benefit accrual, for hours worked during periods for which employers fail to make their required contributions to the fund.

As a multi-employer plan, the plan is funded by employer contributions made under collective bargaining agreements with each of the 33 New England-based Teamsters Union locals. Since its inception in 1958, the plan has required the payment of employer contributions before pension credit is given for purposes of calculating benefit accrual. This practice conflicts squarely with regulations issued by the Secretary of Labor specifying that an employee is entitled to credit, for benefit accrual as well as other pension purposes, for any hours worked "for which an employee is paid, or entitled to payment" without the requirement of actual employer contribution to the fund on the employee's behalf. 29 C.F.R. § 2530.200b–2.

The present controversy over the benefit accrual pension credits began with a letter dated August 31, 1976, from the Department of Labor to the Fund Manager of the plan advising her that the plan provision requiring contributions before credit was granted for purposes of benefit accrual, violated the provisions of ERISA, as well as the above-cited regulation issued pursuant

to that statute. Although the Department of Labor contacted the fund regarding disputes resulting from the denial of pension benefits to individuals, the Department took no action to enforce its regulations. Thereafter, on October 6, 1978, in response to the fund's request for an advisory opinion, the Department of Labor reiterated its position that the fund's refusal to grant benefit accrual credit for hours worked by an employee, but for which no contribution was made to the fund by the employer, violated the requirements of ERISA. The advisory opinion indicated that Labor had conferred with the Internal Revenue Service (IRS) before the opinion was issued.

On July 19, 1978, the fund submitted a revised plan to the IRS for its approval, along with a request for a determination as to whether the plan maintained its status as a qualified trust under the Internal Revenue Code (Code). The plan, as restated, continued to require contribution by an employer before benefit accrual credit was to be given. The IRS issued a favorable determination letter on February 26, 1979, thus maintaining the fund's qualified trust tax status. Subsequent to the 1979 favorable determination letter, representatives of the fund and an agent of the IRS communicated about the fund's accrual requirement and the effect it might have on the fund's continued status as a qualified trust. Before any resolution had been reached, the appellants instituted this action on August 30, 1979. After further communication between representatives of the various parties involved, the Secretary of the Treasury informed the fund on August 30, 1982, that the IRS intended to revoke its previous favorable determination letter.

The district court agreed with appellees' contention that the court lacked jurisdiction because of the federal tax exception to the Declaratory Judgment Act, and granted the motion to dismiss.

## II.

Under the Declaratory Judgment Act, a federal district court may grant declaratory relief "[i]n a case of actual controversy

within its jurisdiction, except with respect to Federal taxes . . . ." 28 U.S.C. § 2201. This section, of course, neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief. The jurisdictional boundaries in tax cases are drawn by the Anti-Injunction Act, 26 U.S.C. § 7421, which provides, with exceptions not relevant here, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax was assessed." The Supreme Court has noted that the main purpose of the Anti-Injunction Act is "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974), *quoting Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The Court also observed that "[t]he congressional antipathy for premature interference with the assessment or collection of any federal tax also extends to declaratory judgments," and that there is no dispute that "the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act." *Bob Jones University,* 416 U.S. at 732 n. 7, 94 S.Ct. at 2044 n. 7.

In determining whether the present case falls within the combined ambit of the Anti-Injunction Act and the tax exception to the Declaratory Judgment Act, we must look at the nature of appellants' claim. If it called in question a specific provision of the Internal Revenue Code, or to a ruling or regulation issued under the Code, the claim would clearly come under the general bars

to jurisdiction and declaratory relief at this stage of proceedings. *See California v. Regan,* 641 F.2d 721, 722 (9th Cir.1981); *Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 4–5 (D.C.Cir.1979); *Ingham v. Hubbell,* 462 F.Supp. 59 (S.D.Iowa 1978), *aff'd sub nom. Ingham v. Turner,* 596 F.2d 315 (8th Cir.1979). Conversely, if jurisdiction were otherwise established and the controversy concerned essentially nontax matters, there would be no question of dismissing the case merely because a decision on the merits might have some collateral tax repercussions.

Here, appellants challenge a regulation initially issued by the Secretary of Labor under Title I of ERISA. While acknowledging the substantial tax implications of their claim, namely, the qualified status of their pension fund under § 401 of the Internal Revenue Code, appellants insist that the special jurisdictional provision in 29 U.S.C. § 1132(k) applies here. That section gives federal district courts jurisdiction over "[s]uits by an administrator, fiduciary, participant, or beneficiary of an employee benefit plan to review a final order of the Secretary [of Labor], to restrain the Secretary from taking any action contrary to the provisions of this Act, or to compel him to take action required under this title." On its face, § 1132(k) does provide a sufficient jurisdictional basis for challenges to the Secretary of Labor's regulations in matters within his exclusive competency such as the prohibited transaction provisions of Title I. *See Cutaiar v. Marshall,* 590 F.2d 523 (3d Cir.1979).

This case, however, is distinguishable from *Cutaiar* in the decisive respect that the benefit accrual provisions in question here do not lie within the Secretary of Labor's exclusive competency. Pursuant to the congressional intent,[1] the White House

1. The legislative history of ERISA indicates that the Internal Revenue Code, which determines the tax status of pension plans, was also intended to be a major enforcement mechanism to ensure compliance with the substantive requirements:

Your committee's bill relies heavily on the tax laws in order to secure compliance with the new requirements that it imposes on pension plans. . . . . Your committee believes that primary reliance on the tax laws represents the best means for enforcing the new improved standards imposed by the bill.

Reorganization Plan No. 4 of 1978, 5 U.S.C. Supp. II, App. 297–98, transferred to the Secretary of the Treasury express authority to issue regulations, *inter alia,* under the benefit accrual section, 29 U.S.C. § 1054, and the Secretary of Labor became bound by such Treasury regulations. *Id.* §§ 101 & 104. Thus, we conclude that the benefit accrual regulation in issue here, even though initially promulgated by the Secretary of Labor, should be viewed as a Treasury regulation in substance because its subsequent adoption, amendment, and enforcement lies expressly within the authority of the Treasury.

We also think that the "primary purpose" of this action is to prevent the Internal Revenue Service from assessing and collecting income taxes and to restore advance assurance of tax advantages under the Internal Revenue Code. *See Bob Jones University,* 416 U.S. at 738, 94 S.Ct. at 2046; *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 760–61, 94 S.Ct. 2053, 2058, 40 L.Ed.2d 518 (1974). The district court correctly found that, although the fund was aware as early as 1976 of the Department of Labor's position regarding the fund's method of granting service credit, the fund did not bring this suit until after it had been informed by the IRS that the favorable determination regarding its qualified trust status might be revoked. To grant the declaratory relief requested by appellants would amount to an advance determination of qualification under 26 U.S.C. § 401 and exemption from federal income taxes under 26 U.S.C. § 501. The case, therefore, falls squarely within the tax exception to the Declaratory Judgment Act. *Wahpeton Professional Services, P.C. v. Kniskern,* 275 F.Supp. 806, 808 (D.N.D. 1967).

### III.

■ One of the established exceptions to the rule barring declaratory relief in tax

matters is a case in which it is shown that the government could, under no circumstances, prevail on the merits of the underlying dispute. *Bob Jones University v. Simon,* 416 U.S. 725, 742–46, 94 S.Ct. 2038, 2048–50, 40 L.Ed.2d 496 (1974); *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). In contending that the district court erred in failing to find that the exception applied in this case, appellants base their argument upon what they regard as significant differences between the participation and vesting provisions of ERISA on the one hand, and the benefit accrual requirements of that statute on the other. Appellants also claim that their view is supported by the legislative history.

The eligibility of an employee to participate in a multi-employer plan under ERISA is set forth in 29 U.S.C. § 1052. In substance, the requirement of this provision is satisfied if the employee may participate after his 25th birthday or if he completes one year of service, whichever is later. The term "year of service" is defined as "a 12-month period during which the employee had not less than 1,000 hours of service." The term "hour of service" is defined as "a time of service determined under regulations prescribed by the Secretary."

The vesting (nonforfeitable) provisions are contained in 29 U.S.C. § 1053 and are essentially the same as the standards for participation. For vesting purposes the term "hours of service" has the same meaning as it has for participation in the plan. Thus, for both the minimum participation and vesting standards, the Secretary of Labor is delegated the authority to define the term "hours of service."

29 U.S.C. § 1054(b)(3)(A), pertaining to benefit accrual requirements provides as follows:

H.R.Rep. No. 779, 93d Cong., 2d Sess. at 30 (1974). *See also* Senate Subcommittee on Labor, Committee on Labor and Public Welfare, I Legislative History of the Employee Retirement Income Security Act, 94th Cong., 2d Sess. at 227; 120 Cong.Rec.S.15737 (1974) (statement

of Sen. Harrison A. Williams, Jr., Chairman of the Senate Committee on Labor and Public Welfare, upon introducing the Conference Report) *reprinted in* 1974 U.S.Code Cong. & Ad. News 5177, 5187–89.

For purposes of determining an employee's accrued benefit, the term "year of participation" means a period of service (beginning at the earliest date on which the employee is a participant in the plan and which is included in a period of service required to be taken into account under section 1052(b) of this title) as determined under regulations prescribed by the Secretary which provide for the calculation of such period on any reasonable and consistent basis.

Appellants declare that this provision shows that the benefit accrual requirements are not based upon the employee's years of service, but rather on his years of participation, and there is no reference therein to the term "hours of service," or to the Secretary's authority to apply that term in defining "year of participation." They also argue that Congress did not define the term "year of participation" for the accrual of benefits, but instead placed only limited restrictions on what may constitute a "year of participation."

Further, appellants contend that Congress intended that the benefit accrual standards were to be unique, and that this is shown by H.R.Rep. No. 807, 93d Cong., 2d Sess., at 107 (1974), *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639, 4670, 4710:

> *Year of service defined.*—For purposes of the vesting and participation rules, the committee bill provides flexibility by indicating that the Secretary is to define a "year of service" by regulations in a manner which provides for its determination on a reasonable and consistent basis. For example, the regulations could specify that a plan could provide that each employee who had met the age and service requirements was to begin his participation on the anniversary date of his own employment, or that all eligible employees would be admitted on the anniversary date of the plan, or that each employee would be covered under the plan on the first quarterly anniversary date of the plan following the anniversary date of his employment.

> However, to ensure that no abuse situation arises, the bill provides certain guidelines as to what constitutes a "reasonable" definition of a year of service. For example, under the bill, the plan's definition of a year of service would have to be such that no employee with more than 17 months of continuous service could be excluded from the plan on account of service; moreover, the average employee (assuming hypothetically that employees were hired at the same rate each day throughout the year) could not have a wait of more than 12 months for participation. *Of course this definition does not apply for purposes of benefit accrual, and a plan may use any reasonable definition of "year of service" for this purpose that is consistently applied so long as the plan meets the antidiscrimination requirements of the law.*

(Emphasis supplied and footnote omitted as in appellants' brief).

In sum, appellants argue that the regulations of the Secretary of Labor are not authorized by and are contrary to the pertinent statutory provisions, and accordingly, that there are no circumstances under which the government could prevail on the underlying issues.

The government counters with the argument that the regulations of the Secretary of Labor are in accord with the provisions of ERISA and that the appellants' refusal to grant benefit accrual credit as required in the regulations violates the provisions of ERISA for the following reasons:

1. 29 U.S.C. § 1054(b)(3)(A), quoted above, authorizes the Secretary of Labor to determine what constitutes a year of participation for the purpose of calculating an employee's accrued benefit.

2. The quoted statute also provides that the "year of participation" includes the same period of service which must be taken into account under section 1052(b)(1) in determining the employee's eligibility.

3. The Secretary's regulations follow the requirements of the statute by providing that all service from the date of the employee's participation in the plan must be

taken into account if it is included within a period of service which the plan is required to take into account for the purposes of the participation requirements of the statute.

4. In 29 U.S.C. § 1001, Congress declared that it is the policy of ERISA to protect the interest of participants and their beneficiaries in private pension plans "by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance." The plan does not comport with the declared purpose of ERISA, because it transfers the risk of noncontributions from the plan to individual participants whose employers have defaulted instead of spreading the losses among its 60,000 participants, and if necessary, recouping those losses through the assets and earning power of a fund that has net assets of over $400 million.

5. In enacting ERISA, Congress included a special relief provision, now codified as 26 U.S.C. § 411(a)(3)(E), which permits multi-employer plans to cancel any accrued benefits payable to employees of any employer if the benefits accrued before the employer had an obligation to contribute under the plan and has ceased his contributions. By limiting this relief to the cancellation of past service benefits when the employer ceases his contributions, Congress intended to make the plans responsible for the payment of benefits attributable to current service.

We need not decide, and do not decide, which of these conflicting views is a correct construction of the pertinent provisions of ERISA. We are persuaded that appellants have failed to show that "under the most liberal view of the law and the facts," the government could not prevail. This is the burden imposed upon them as a result of the Supreme Court's decision in *Enochs, supra,* 370 U.S. at 7, 82 S.Ct. at 1129. The burden is a heavy one. *McCabe v. Alexander,* 526 F.2d 963 (5th Cir.1976); *St. Louis Park Medical Center v. Lethert,* 286 F.Supp. 271 (D.Minn.1968). Although appellants have advanced a colorable interpretation of the statutory language and its legislative history, they have not shown that their interpretation is necessarily correct and that the government could, under no circumstances, prevail. We, therefore, hold that the tax exception to the Declaratory Judgment Act is applicable in these circumstances and precludes a decision on the merits.

IV.

This disposition of the case does not deprive the appellants of a remedy. If their tax exempt status is revoked, they may, as the district court noted, obtain review of the revocation in the Tax Court by complying with the provisions of 26 U.S.C. § 7476; they may wait until a deficiency is assessed against them and contest the deficiency in the Tax Court, or they may pay the tax and sue for a refund.