UNITED STATES of America,
Plaintiff,

. v.

Steven A. BERK, Deborah B. Berk, Ocwen Loan Servicing, LLC, The Massachusetts Department of Revenue, Defendants.

Civ.A. No. 06–11457–DPW.

United States District Court, D. Massachusetts.

Aug. 17, 2007.

Robert J. Kovacev, U.S. Department of Justice, Washington, DC, for Plaintiff.

William T. Hogan, III, Nelson, Mullins, Riley & Scarborough, LLP, Christopher J. Decosta, Donovan Hatem, LLP, Eileen Ryan McAuliffe, Massachusetts Department of Revenue, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

The United States of America brings this action against Defendants Steven A. Berk and Deborah B. Berk (collectively the "Berks") to reduce unpaid federal income tax assessments against the Berks to judgment (Count I) and to foreclose the federal tax liens associated with those assessments against a parcel of real property (the "Property") owned by the Berks (Count II). Also named as Defendants are Ocwen Loan Servicing, LLC ("Ocwen"), which claims an interest in the Property by virtue of a mortgage, and the Massachusetts Department of Revenue ("Commonwealth"), which claims an interest in the Property by virtue of Massachusetts state tax liens assessed against the Berks. The Berks, who appear *pro se*, have coun-

terclaimed alleging that the tax assessments and liens on their property are invalid. The Berks seek damages for illegal tax collections, an injunction to remove all illegally placed liens, and an abatement of all tax liabilities.

The United States has filed a motion to dismiss the Berks' counterclaim and a motion for partial summary judgment on Count II. Defendants Ocwen and the Commonwealth have filed separate cross motions for summary judgment on Count II.

## I. BACKGROUND

This case arises from the Berks' failure to pay their joint federal and state income taxes for the tax years 1990 through 2004.[1] The United States asserts that the Berks' federal tax liabilities total in excess of three quarters of a million dollars. Assessments of the Berks' federal tax liabilities led to the attachment of federal tax liens to all property and rights to property of the Berks, including the Property, which is located in Weston, Massachusetts and which they use as their residence. The Commonwealth asserts that the Berks' state tax liabilities total in excess of a quarter million dollars; the Commonwealth has also placed tax liens on the Property. The Berks generally do not dispute the allegations that they have failed to pay taxes; however, they do challenge the validity of the tax assessments made by the United States and the liens against the Property associated with those assessments.

### A. The Berks' Tax Liabilities

Defendant Steven A. Berk is a clinical psychologist who resides with his wife, defendant Deborah P. Berk, at the Property. From 1990 to 2004, the Berks accrued federal tax liabilities for every tax year excluding 1994 and 2000.

The Internal Revenue Service ("IRS") has issued Certificates of Assessment (Form 4340) that detail the Berks' tax liabilities for each individual tax period, including statutory interest and penalties. These assessments reflect liabilities that had not been paid as of the dates of assessment. Balances remain for all of the assessed tax periods, totaling $750,863.50, plus statutory interest and additions from and after August 2, 2006.

The Commonwealth has also assessed unpaid Massachusetts tax liabilities against the Berks, which stretch from the tax years 1990 through 2004, with the exception of 2000. As of November 30, 2006, these state tax liabilities total $245,385.65. plus interest and penalties.

---

1. The Berks' *federal* tax liabilities do not include the tax years 1994 and 2000. The Commonwealth, however, has recorded consecutive and uninterrupted tax liens against the Berks from 1990–2004 with the exception of tax year 2000.

I note that shortly after the August 8, 2007 final hearing before me on summary judgment motions as to the foreclosure sought in Count II by the United States, the Berks and counsel for the United States separately reported they had just learned that the United States had in January 2007 recorded Certificates of Release of Federal Tax Lien for tax years 1990 and 1991 regarding the Property. Counsel for the United States contends that this recording took place "by mistake." While reciting "that the IRS ... has the statutory right to revoke Certificates of Release and reinstate the liens" *citing* 26 U.S.C. § 6325(f)(2), the United States observes "it is doubtful that there will be any surplus proceeds after the remaining liens [on the Property] are satisfied [by foreclosure]." As a consequence, the United States suggests "any foreclosure claims with respect to those two years may well be moot." Be that as it may, in light of the recorded release by the United States of the 1990 and 1991 tax year liens, the judgment of foreclosure which will be issued in accordance with this Memorandum and Order will not list entitlement of the United States to assessments for tax years 1990 and 1991 in the list of priorities for payment from proceeds.

The Berks filed for Chapter 7 bankruptcy protection on October 15, 1997, for which they received a discharge on November 23, 1998. *See In re Steven A. Berk and Deborah B. Berk,* Case No. 97–47192 (Bankr.D.Mass.).

## B. The Property in Weston

The Berks became the owners of the Property, the address of which is 236 Glen Road in Weston, Massachusetts, on August 20, 1992. According to the deed, the Property straddles Middlesex and Norfolk Counties and contains 30,005 square feet of land.

The Berks executed a note and granted a mortgage on the Property in favor of Margaretten & Company on August 21, 1992. The mortgage was eventually assigned to HSBC Bank USA, N.A. as Trustee on Behalf of ACE Securities Corporation Home Equity Trust and for the Registered Holders of ACE Securities Corporation Home Equity Loan Trust, Series 2005–SD1, Asset–Backed Pass–Through Certificates. Ocwen, which has a place of business at 1675 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33416, is the servicer of the mortgage pursuant to a limited power of attorney between HSBC and Ocwen on October 19, 2006. The power of attorney grants Ocwen the authority to receive payments on the note and mortgage, endorse checks or other instruments received by Ocwen made payable to HSBC, pursue collection activities and foreclosures relating to the note and mortgage, and to perform other acts on behalf of HSBC that arise in the normal course of servicing the note and mortgage. As of January 9, 2007, the amount due Ocwen under the note and mortgage and HSBC's mortgaged security interest in the Property was $347,640.95.

## C. The Tax Liens

In accordance with 26 U.S.C. § 6321, after the Berks' failure to resolve their tax liabilities, the United States issued federal tax liens attaching to the Berks' property and rights to property, including the Property in Weston. Notices of these liens were filed with the South Middlesex Register of Deeds and the Norfolk Register of Deeds. Similarly, the Commonwealth recorded six notices of state tax liens against the Berks spanning the 1990–2004 tax years.[2]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking sum-

---

**2.** I will grant the Commonwealth's unopposed motion to amend its answer. The Commonwealth filed its motion on Sept. 26, 2006, to reflect that the Commissioner of Revenue had filed *six* notices of Massachusetts Tax Liens instead of the *five* that it had described in its original answer. The additional lien concerns the tax year 2004 and lists an assessment date of Dec. 5, 2005 with a balance due of $5,067.66.

A party is allowed to amend its pleading once as a matter of course at any time before a responsive pleading is served, without leave of court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). Although the First Circuit has held that excessive delay is a cause to deny a motion to amend an answer because of prejudicial concerns, *See Tiernan v. Blyth, Eastman, Dillon & Co.,* 719 F.2d 1, 4 (1st Cir.1983) (citing *Hayes v. New England Millwork Dist., Inc.,* 602 F.2d 15, 19 (1st Cir.1979)), no such concern exists here because the motion was made a mere six days after the original answer was filed. In addition, while the requested additions to the record are substantive, they do not affect the outcome of the substantive motions before me at this time. *See* Note 11 *infra.*

mary judgment must make a preliminary showing that no genuine issue of material fact exists. *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Once the movant makes such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue. *Id.* A "genuine" issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir. 1996)).

■■■ In all tax suits, the Internal Revenue Commissioner's deficiency determination "is presumed correct, and ... the taxpayer bears the burden of proof and persuasion to show otherwise." *Lefebvre v. Commissioner of Internal Revenue*, 830 F.2d 417, 419 n. 3 (1st Cir.1987) (citing *United States v. Rexach*, 482 F.2d 10, 15–17 (1st Cir.1973)). In terms of tax assessments, a taxpayer must meet this burden by presenting specific evidence sufficient to overcome the "presumption of correctness" attached to any federal tax assessment. *Fulle v. United States*, No. 88–893–MLW, 1994 WL 568842, at *2 (D.Mass. Oct. 5, 1994). If the taxpayer cannot meet this burden then the court must allow the United States' motion for summary judgment as to the validity of the assessed tax amounts. *See United States v. LaBombard*, 107 F.Supp.2d 57, 60 (D.Mass.2000).

**B. Motion of the United States for Partial Summary Judgment (Count II)**

In moving for partial summary judgment on Count II of its complaint, the United States effectively contends that there is no genuine issue of material fact as to the validity of the federal income tax assessments against the Berks and that the United States is entitled to foreclose its liens arising from those assessments against the Property.

**1. Validity of Assessments and Notice**

■■■ Pursuant to 26 U.S.C. § 6201 *et seq.*, the IRS has the authority to make assessments of all unpaid taxes. Once the IRS makes an assessment of tax liability, it must "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof" within 60 days of the assessment. 26 U.S.C. § 6303. The IRS is required to leave notice at the taxpayers' home or usual place of business, or by mail. *Id.* The IRS in practice "makes assessments by having an assessment officer fill out and sign a 'summary record of assessment,' also known as a Form 23C." *Geiselman v. United States*, 961 F.2d 1, 5 (1st Cir.1992)(per curiam). Here, the government has not provided Forms 23C but instead has provided Form 4340 Certificates of Assessments and Payment, which list the amounts of each assessment and the 23C assessment date for each tax period in question as well as dates of notices sent to the Berks. The Berks challenge the procedural validity of the assessments by conclusorily alleging that "in numerous instances," they did not receive notice of assessments as required by 26 U.S.C. § 6303.[3]

■■■ Forms 4340 are "presumptive proof of a valid assessment," *Geiselman*, 961 F.2d at 6 (quoting *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir.1989)), so long as they contain 23C dates and sufficient dates of notice. *See Geiselman*, 961

---

**3.** The Berks admit that they were formally notified of their tax liabilities for the tax periods ending December 31, 1992 and December 31, 1993, respectively. (Answer § 3.)

F.2d at 5–6; *United States v. Kattar*, 81 F.Supp.2d 262, 267–68 (D.N.H.1999). Here, the 4340 Forms all contain 23C dates, typically located in a column on the right-hand side of page one of the certificates. In terms of sufficient notice dates, the First Circuit has noted that "First Notice" dates (which the Government contends without opposition are the Statutory Notice dates it has provided), usually located on the certificates as notations documenting when notice and demand for payment was sent, *Niemela v. United States*, No. 92–2192, 1993 WL 198171, at *2 (1st Cir. June 11, 1993) (per curiam), are sufficient to constitute notice of assessment and demand. *Geiselman*, 961 F.2d at 6.

Courts have accepted Forms 4340 as sufficient to "establish a *prima facie* case that notice of assessment and demand for payment was sent to the taxpayer," *Schmidt v. I.R.S.*, 717 F.Supp. 763, 765 (D.Kan.1989), and courts in the First Circuit have held Forms 4340 to be presumptive evidence when a "First Notice" date is listed. *See Geiselman*, 961 F.2d at 6; *United States v. Colwell*, No. 95–282–B, 1996 WL 512342, at *2 (D.Me. June 7, 1996). The Berks have tendered no evidence to overcome this presumption.

## 2. The Validity and Enforceability of the Berks' Tax Liens

■ Federal tax liens are created upon all property and rights to property when a taxpayer neglects or refuses to pay any tax after demand. 26 U.S.C. § 6321.

The lien continues "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason or lapse of time." 26 U.S.C. § 6321. Under 26 U.S.C. § 6502(a), the enforceability time period will lapse 10 years after the assessment of the tax or pursuant to an installment agreement between the IRS and the taxpayer. Therefore, in order to bring an action to enforce a lien foreclosure, the government must bring suit in accordance with a 10–year statute of limitations period.

### a. Lien Validity

■ The Berks argue that their tax liabilities for the tax years 1993 and 1995 were discharged due to the tolling of § 6502. According to the tax certificates for 1993 and 1995, assessment for tax year 1993 took place on February 27, 1995, and assessment for tax year 1995 took place on November 18, 1996. The United States commenced this action to reduce the Berks' tax assessments to judgment and foreclose the liens on their property on August 17, 2006. That date is within the 10 year period for tax year 1995, and the Berks do not offer any evidence that would otherwise contradict that fact. However, the tax years 1990–93 would appear at first blush to fall outside the ten year lapse period since the assessment dates for those periods are more than 10 years prior to August 17, 2006.[4]

4. Defendants did not initially raise this argument for tax years 1990–92, apparently because they separately argue that their personal liability for tax years 1990–92 was previously discharged in their Chapter 7 bankruptcy, a matter at issue in Count I where the United States seeks a money judgment against the Berks personally. While bankruptcy discharge may relieve the Berks of personal liability for those years under 26 U.S.C. § 6325, it does not render the federal tax liens for those years unenforceable. *See In re Isom*, 901 F.2d 744, 745 (9th Cir.1990) (holding that § 6325(a)(1) does not require the IRS to release valid tax liens when the underlying tax debt is discharged in bankruptcy). Thus, this argu-

Although the basic statute of limitations period is ten years, the period may be extended beyond its normal length by the pendency of offers in compromise and other exceptions. Offers in compromise suspend the statute of limitations under § 6502, prohibiting the IRS from making a levy during that time period. 26 U.S.C. § 6331(k) and (i)(5). They conversely allow the government to consider the offer without suffering prejudice due to the running of the statute of limitations on the period in which they can collect the taxpayer's liabilities. *United States v. Ressler*, 576 F.2d 650, 652 (5th Cir.1978).

Here, the Berks' tax certificates indicate that for the questioned tax periods of 1990–93, several offers in compromise were recorded and subsequently rejected by the IRS. For example, for the tax period 1990,[5] the Berks' tax liabilities were assessed on July 5, 1993, which would normally place the expiration of the statute of limitations on collection on July 5, 2003. During the ten year limitations period, however, four offers in compromise were recorded and withdrawn or rejected, which had the effect of extending the limitation period by three years, ten months, and forty days.[6] In addition, the Berks' Chapter 7 bankruptcy proceeding also extended the expiration of the statute of limitations, pursuant to 26 U.S.C. § 6503(h), adding one year and eight days to the delay period. *See In re Cole*, 205 B.R. 668, 673 (Bankr.D.Mass.1997) (holding that bank-

ruptcy proceeding suspended the limitation period and therefore federal tax liens remained valid and enforceable). As a result, the limitations period was extended to extend beyond the August 17, 2006 date of this action's commencement. In a chart marked Exhibit A and attached to this Memorandum, I set forth a summary of the Limitations Period deadlines for the assessments regarding the several tax years at issue in this case.

The Berks offer no evidence to dispute the validity of the dates of the offers in compromise and subsequent rejections that would raise a genuine issue of material fact. Therefore, the Berks' liens cannot be deemed invalid as a result of the limitations period.

### b. Lien Enforceability

Because the collections period can be extended, Congress established a system of refiling an IRS lien as a result of an extension. *Cole*, 205 B.R. at 673. 26 U.S.C. § 6323(g)(3) establishes a "required refiling period" that spans the one-year period ending 30 days after the expiration of ten years after the date of the assessment of the tax. Therefore, if a new Notice of Federal Tax Lien (NOFTL) is refiled within the required refiling period, "the lien will continue to exist and will maintain the priority it had under the original NOFTL." *Id.*

The Berks allege that the Plaintiff refiled NOFTLs for the tax years 1992–93

---

ment is not applicable to Count II where an *in rem* remedy is sought. However, the recording by the United States of releases of liens to the 1990 and 1991 tax years takes those years outside the scope of the judgment which shall enter as to Count II. *See* Note 1 *supra*.

5. This discussion of the role of the offer in compromise process in extending statutes of limitation is solely for purposes of explaining by example. The 1990 United States tax is, as a result of the release of the lien by the United

States, no longer an issue as to Count II. *See* Notes 1 & 4 *supra*.

6. The first offer in compromise was recorded on May 10, 1996 and withdrawn on December 13, 1996; the second offer was recorded on June 6, 1997 and rejected on October 31, 1997; the third offer was recorded on September 18, 2000 and rejected on June 20, 2003. The fourth offer was recorded on December 1, 2004 and rejected on February 11, 2005.

after the refiling period, rendering them invalid and unenforceable. However, the record establishes that the United States refiled NOFTLs for those years on November 23, 2004, well within the one year refiling period determined by the assessment date (for both years) of February 27, 1995.[7] The Berks allege that since the NOFTLs were refiled again on September 26, 2005, those refilings fall outside the refiling period and are invalid. This argument fails because 26 U.S.C. § 6323(g)(3)(B) makes clear that a valid refiling alters the required refiling period of any following refiling to reflect the date of the previous one.[8] Therefore, the refiling on September 26, 2005 was valid.[9]

■■■ The Berks also allege that for several of the tax periods, they did not receive NOFTLs in violation of § 6320(a).[10] Although § 6320(a) does require notice to the taxpayer of any NOFTL filings, the "failure to notify the taxpayer concerning the filing of a N[O]FTL does not affect the validity and priority of the N[O]FTL." Treas. Reg. § 301.6320–1(a)(2), Question & Answer A–12. Of course, Forms 4340 and the NOFTLs themselves (Answer to Pl.'s Mot. for Summ. J. Ex C–F.) indicate that the notices were sent to the Berks; in the absence of evidence to the contrary, this is sufficient proof "of the adequacy and propriety of notices and assessments that

have been made." *Pragasam v. C.I.R.*, No. 12636–04L, 2006 WL 1083437, at *3 (T.C. April 25, 2006). The Berks do not tender any evidence that would call into question the notice dates located on the NOFTLs and the Forms 4340. In any event, the Berks do not dispute that they engaged in the offer of compromise process, which necessarily imports prior notice, for each of the relevant tax years.

### c. Relative Priorities of Ocwen & the Commonwealth

■■■ Having found that the federal tax liens are valid, I must resolve the priority of the parties' liens with respect to each other. Ocwen has moved for partial summary judgment on Count II, arguing that as the assignee of the mortgage on the Property, it has first priority in the case of lien foreclosure. Ocwen requests a declaratory judgment acknowledging that HSBC possesses the most senior security interest in the Property. The United States concedes Ocwen's priority but it argues that it still has priority over the Commonwealth's liens for a select number of tax periods. The Commonwealth for its part has moved for partial summary judgment, claiming that its liens against the Berks have priority over the United States' liens pursuant to Mass. Gen. Laws ch. 62C, § 50(a). Like the United States, the Commonwealth does not dispute Ocwen's senior priority.[11]

7. The Berks acknowledge this in their Answer to Pl.'s Mot. for Summ. J. Ex. D.

8. The language of § 6323(g)(3)(B) states "the one-year period ending with the expiration of 10 years after the close of the preceding required refiling period for such notice of lien."

9. In a chart marked Exhibit B and attached to this Memorandum, I set forth the NOTFL dates and any subsequent refilings that were made.

10. It is unclear whether the Berks are referring to the original NOFTLs or the refilings regarding several of these tax periods. Since they are pro se, I will assume that they are

referring to the original NOFTLs. In any event, § 6320(a)(1) does not require the IRS to notify taxpayers of NOFTL refilings. Treas. Reg. § 301.6320.1(a)(2), Question & Answer A–6.

11. Under 26 U.S.C. § 6323(a), federal tax liens are valid against certain third parties, such as holders of security interests, only after the filing of a notice of the lien pursuant to § 6323(f). It is undisputed here by all parties that the mortgage was filed on Aug. 21, 1992, well before any notice of tax liens was filed by either the United States or the Commonwealth. Therefore, HSBC, as serviced by Ocwen, maintains a security interest with senior priority in the case of a lien foreclosure.

■ Under 26 U.S.C. § 6322, liens imposed by § 6321 arise at the time the assessment is made. "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question." *Middlesex Sav. Bank v. Johnson*, 777 F.Supp. 1024, 1027 (D.Mass.1991) (citing *United States v. Security Trust & Savings Bank*, 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950)). Priority for the purposes of federal law is governed by the rule of "first in time, first in right." *Middlesex*, 777 F.Supp. at 1027 (citing *United States v. New Britain*, 347 U.S. 81, 85–86, 74 S.Ct. 367, 98 L.Ed. 520 (1954)).

■ Consequently, Mass. Gen. Laws ch. 62C, § 50(a) does not of its own force make the Commonwealth's tax liens superior to any liens of the United States. Priority between the United States and the Commonwealth is determined based on the dates of assessment with respect to each tax year in question. *See Horizon Bank and Trust Co. v. Flaherty*, 309 F.Supp.2d 178, 199 (D.Mass.2004) (holding that federal tax liens had priority over those of the Commonwealth based on earlier dates of assessment). According to the respective federal and state tax liens here, the United States has priority over the Commonwealth for tax years 1992–96, 1999, and 2004. The Commonwealth has priority over the United States for tax years 1997–98 and 2001–03.[12] The United States does not dispute the Commonwealth's priority for those years.[13]

## C. The United States' Motion to Dismiss the Berks' Counterclaim

The Berks have filed a counterclaim as part of their answer to the United States' complaint, alleging that the tax liens are illegal and should be removed. They further allege that the United States violated its own policies with regards to the Offer-in-Compromise process and relied on "inherently biased and discriminatory" standards during that process. The Berks also make several allegations regarding valuation of their property by the United States, which they claim constituted de facto discrimination. The Berks seek an injunction to remove all illegally placed liens; the abatement of any tax liabilities; statutory damages in the amount of $100,000, and compensatory and punitive damages due to financial, physical, and emotional injury. The United States has responded with motions to dismiss the Berks' counterclaim pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6), on grounds that (1) sovereign immunity bars the action against the United States, and (2) the defendants have failed to allege any claim for relief against the United States.

### 1. Jurisdiction

■ Because the Berks have counterclaimed against the United States, they must demonstrate that the United States has waived its sovereign immunity in order for this court to have jurisdiction over the counterclaim.[14] The First Circuit has recognized that "the United States is not subject to suit without a waiver of sover-

---

**12.** As discussed in Note 2 *supra*, in its amended answer, the Commonwealth added reference to its lien for tax year 2004. The federal assessment date for tax year 2004 (October 10, 2005) preceded the Commonwealth's assessment date for tax year 2004 (December 2, 2005). Therefore, the amended answer does not affect the priority of the United States over the Commonwealth for tax year 2004.

**13.** In a chart marked Exhibit C and attached to this Memorandum, I set forth in descending order the priorities among the creditors

for those liens that have been in place in this case, noting that the liens of the United States for the tax years 1990 and 1991 are no longer in issue because they have been released. *See* Notes 1 and 4 *supra*.

**14.** Under Fed.R.Civ.P. 13(d), sovereign immunity applies not only to claims against the United States but also counterclaims. *See Waylyn Corp. v. United States*, 231 F.2d 544, 547 (1st Cir.1956) ("[t]he filing of a suit in the name of the United States does not in itself amount to a waiver of sovereign immunity,

eign immunity, and that any such waiver is to be strictly construed." *Progressive Consumers Fed. Credit Union v. United States,* 79 F.3d 1228, 1230 (1st Cir.1996) (citing *Nickerson v. United States,* 513 F.2d 31, 32–33 (1st Cir.1975)). Waiver of sovereign immunity must be expressly authorized by Congress. *See Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

 The Berks contend two statutory provisions constitute a waiver of sovereign liability permitting a damages claim. First, they look to 26 U.S.C. § 7432 which provides that "[i]f any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States." They also look to 26 U.S.C. § 7433, which allows for a damages claim against the United States in the case of reckless, intentional, or negligent disregard of any provision of this title in the collection of taxes.

The Berks cannot rely upon those statutes in this case because both § 7432(d) and 7433(d) require that the taxpayer exhaust all administrative remedies available within the IRS before bringing a suit for damages. The record shows that the Berks did not file an administrative claim with the IRS until January 11, 2007, more than one month after they filed their counterclaim against the United States on December 7, 2006. This conflicts with the requirement in §§ 7432 and 7433 that before filing a damage suit, the taxpayer must exhaust all administrative remedies within the IRS. *See White v. C.I.R.,* 899 F.Supp. 767, 772 (D.Mass.1995) (Ponsor, J.). In this connection, 26 C.F.R. § 301.7433–1(d) directs that the taxpayer cannot bring a civil action in federal district court before either of two dates: the date the administrative claim is decided, or the date six months after the administrative claim has been filed.[15] Neither of these two dates was reached before the instant litigation commenced; consequently, sovereign immunity has not been waived as to the Berks' §§ 7432–7433 claims in this action.

 Several of the Berks' other claims also fail to demonstrate waiver of sovereign immunity because of the nature of the relief involved. First, with respect to the Berks' request for an injunction, 26 U.S.C. § 7421(a) provides, with certain exceptions, none of which apply here,[16] that

subjecting the United States to an affirmative adverse judgment on a counterclaim filed by the defendant in such suit.").

**15.** At the July 12, 2007 hearing in this matter, the United States reported that the Berks' administrative claim had been denied. The Berks then contended that they did not receive notice of the decision. At the last hearing in this matter on August 8, 2007, there appeared to be further dispute about the disposition of the Berks' administrative claim. The United States thereafter filed what it said was a copy of its denial letter to the Berks which states that the claim had not been rejected but could not be processed because certain information and substantive evidence had not been submitted. In any event, when and if exhaustion of remedies as to a valid administrative claim has been established, those claims will become ripe for pursuit in a separate action. But such claims may not be litigated in this action, which was filed before any effort to exhaust administrative remedies had even begun. I note that under the Court's related case assignment rules, L.R. 40.1(G), any such new action would likely be assigned to me for resolution.

**16.** The Berks cite 26 U.S.C. § 6331(i)(4)(B) as authority to support their request for an injunction, but § 6331(i)(4)(B) only applies to unpaid divisible taxes; this provision refers to "any tax imposed by subtitle C," which involves employment taxes. Moreover, § 6331(i) only applies to unpaid divisible taxes during the pendency of a refund suit.

courts cannot entertain suits for the purpose of restraining the assessment or collection of any tax. Second, even if I were to construe the Berks' requests for relief also to include a request for a declaratory judgment, I find that 28 U.S.C. § 2201(a) bars federal district courts from granting declaratory relief in any actions involving federal taxes. *Progressive Consumers,* 79 F.3d at 1233 (citing *McCarthy v. Marshall,* 723 F.2d 1034, 1037 (1st Cir.1983)).

Lastly, the Berks allege that "Plaintiff has, by virtue of its arbitrary, prejudicial and discriminatory actions, willfully, intentionally and maliciously violated [their] civil rights," seeking compensatory and punitive relief. While the Berks, as a general proposition, may challenge "the constitutionality, legality, or fairness of any IRS practice or of the amount of taxes assessed or collected," *Hostar Marine Transp. Sys., Inc. v. United States,* No. 05–10111–DPW, 2005 WL 1331221, at *3 (D.Mass. May 26, 2005) (quoting *Templeman v. Beasley,* 1993 WL 436842, at *5, 1993 U.S. Dist. LEXIS 12084, at *16 (D.N.H. Aug. 23, 1993)), without waiver of sovereign immunity, they may not bring a claim for money damages raising such allegations against the United States as a party. And even if the Berks were to file suit against individual officers of the government in a *Bivens*-type action, the action would still be subject to dismissal, because Congress has established a comprehensive remedial scheme to address such claims. *Hostar,* 2005 WL 1331221 at *3. *See also Gonsalves v. IRS,* 975 F.2d 13, 15 (1st Cir.1992) (holding that there is no "implied right of action, analogous to that found in *Bivens.*"). Because the United States has not waived its sovereign immunity with respect to any aspect of the Berks' counterclaim, the counterclaim must be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

## D. Homestead and the Foreclosure Remedy

The last issue that I must confront on the merits of the summary judgment motions is whether the Berks' declaration of homestead for the Property prevents this Court from issuing an order of foreclosure on the federal tax liens. I raised this issue *sua sponte* at the July 12 hearing and afforded the parties an opportunity to make written submissions. I find on the basis of the submissions that the Berks filed a Declaration of Homestead on the Property on May 15, 1995.[17] Because I find, however, that the Berks' homestead has no effect on the enforceability of the federal tax liens or on Ocwen's foreclosure rights, I conclude that the homestead is not a barrier to foreclosure and the subsequent resolution of the parties' interests in accordance with the order of lien priority which I have established.

With respect to Ocwen's interest, the Massachusetts Homestead Act, MASS. GEN. LAWS ANN. ch. 188, § 1 (2004), allows property owners to declare homestead in order to avoid conveyance, attachment, levy and sale for payment of debts and legacies. But the statute does not include debts contracted prior to the acquisition of the homestead estate or debts contracted for the purchase of the home. In addition, § 5 of the Act directs that no homestead shall affect a mortgage, lien, or other encumbrance previously existing,

---

There is nothing in the record to indicate that the Berks have filed a refund suit.

17. The Declaration of Homestead is in the name of Steven Berk only; the United States reports that it has not located any declaration of homestead made by Deborah Berk. I assume, however, that the May 15, 1995 homestead declaration applies to both Mr. and Mrs. Berk.

and § 6 exempts mortgagees and those claiming under them from subsequent declarations of homestead.[18] *See In re Desroches,* 314 B.R. 19 (Bankr.D.Mass.2004) (holding that state homestead exemption was subordinated to subsequently recorded mortgage which contained words of grant and phrase "with mortgage covenants"); *In re Leicht,* 222 B.R. 670, 673 (1st Cir. BAP 1998) ("Mortgagees and encumbrancers of the homestead realty are protected against a subsequent homestead declaration."). Here, the parties are in agreement that Ocwen holds a valid mortgage on the Property through a prior assignment. Accordingly, I find that the Berks' homestead does not affect Ocwen's interest and priority in a foreclosure of the Property.[19]

■■■■ With respect to the authority of the United States to enforce its tax liens, 26 U.S.C. § 7403 provides the Government with the authority to file a civil action in federal district court to enforce a federal tax lien with respect to such tax or liability or to subject any property of the delinquent to the payment of such tax or liability. The court has the authority to decree a sale of such property after determining the merits of all claims to and liens upon the property when an interest or claim of the United States is established. 26 U.S.C. § 7403(c). The Supreme Court has held that when a state-created exemption, such as a homestead, conflicts with federal law, the exemption does not immunize a property from federal tax liens under the Supremacy Clause. *See United States v. Rodgers,* 461 U.S. 677, 701–02, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). "[E]xempt status under state law does not

bind the federal collector." *United States v. Craft,* 535 U.S. 274, 288, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) (quoting *Drye v. United States,* 528 U.S. 49, 59, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999)). Consequently, the Berks' homestead does not prevent the United States from using its authority to foreclose on its federal tax liens.

■■■■ Finally, I observe that the Berks' 1998 Chapter 7 bankruptcy discharge does not exempt the Property from foreclosure and the enforceability of the federal tax liens. As discussed in Note 4 *supra,* the Berks' bankruptcy discharge may relieve them of any personal liability for years 1990–92, but it does not affect the enforceability of the tax liens and of any valid liens that arose afterwards. *See Isom,* 901 F.2d at 745.

■■■■ As to Ocwen, the Court has held that Congress enacted the Bankruptcy Code with the understanding that the mortgagee cannot be compelled "to relinquish the property to the mortgagor free of the lien unless the debt was paid in full." *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992); *see also* H.R.Rep. No. 95–595, at 357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6313 ("Subsection (d) permits liens to pass through the bankruptcy case unaffected."). "[T]he creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation." *Johnson v. Home State Bank,* 501 U.S. 78, 78–79, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). In addition, 11 U.S.C. § 522(c)(2)(B) directs that while property can be exempt from liability for any debt

---

18. Section 6 does direct that the homestead estate prevails against third parties who acquire equity of redemption on execution of the property, but that provision does not apply here to Ocwen.

19. In addition, the Berks expressly waived any homestead exemption in the mortgage itself through Paragraph 23 which states "Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property."

of the debtor before the commencement of a bankruptcy case, there is an exception for a debt secured by a lien, specifically a tax lien filed with proper notice. Again, as I discussed in Note 4, *supra*, bankruptcy discharge may relieve the Berks of their personal liability but allows for an *in rem* action to enforce a preexisting claim against the Property.[20]

Because the Berks' homestead has no effect on Ocwen's interest in the mortgage on the Property and the United States' interest in enforcing the federal tax liens, nothing prevents this Court from ordering a foreclosure of the Property and the subsequent resolution of Ocwen, the United States and the Commonwealth's interests in the Property, according to the priority set forth in Exhibit B to this Memorandum.

### III. RULE 54(b) JUDGMENT AS TO COUNT II

This Memorandum and Order resolves in favor of the United States all issues necessary to the award of judgment, pursuant to 26 U.S.C. § 7403(c), foreclosing the Property and directing an order of priorities for distribution of the proceeds of the sale. There remains a dispute of fact as to Count I, which seeks a parallel money judgment claim as to the Berks personally, specifically whether outstanding liability for the tax years 1990, 1991 and 1992 were subject to discharge in the Berks' Chapter 7 bankruptcy proceeding. *See* Note 4 *supra.*

I find that the in rem remedy of foreclosure which I have determined to award as to Count II disposes completely of the discrete substantive claim presented by that count. Because the common issue between Count II and Count I—the validity and amount of the 1992–1993, 1995–1999

and 2001–2004 federal tax years—has been determined by my disposition of Count II, there is no prospect of duplication of efforts in reducing Count II to final judgment before final disposition of Count I is realized.

Moreover, the value of the foreclosure remedy sought by the United States, without objection by other creditors having secured interests in the Property, will be compromised by further delay in entry of final judgment because carrying costs—including taxes—will continue to accrue pending foreclosure. Recent trends in housing markets suggest that an increase in value pending disposition is no certainty and that delay in any foreclosure sale would be improvident.

Consequently, finding no just reason for delay in entry of judgment on Count II and substantial potential harm if judgment on that count is delayed, I will, pursuant to Fed.R.Civ.P. 54(b) direct that a separate final judgment as to Count II be entered.

### IV. CONCLUSION

For the reasons set forth above, I GRANT:

(a) The Commonwealth's motion to amend its answer (# 9);

(b) The motion of the United States to dismiss (# 25);

(c) The motions for summary judgment of the United States (# 30) the Commonwealth (# 27) and Ocwen (# 33); and

(d) The motion of the United States for separate judgment of foreclosure (# 52).

Accordingly, I have directed the Clerk to enter an order of foreclosure as a final

---

**20.** As to the tax liens for tax years 1993 and beyond, the discharge has no affect because they either arose subsequent to the bankruptcy petition date or relate to tax returns filed three years or less before the petition date. *See* 11 U.S.C. § 507(a)(8)(A)(i) & (iii); 523(a)(1).

judgment pursuant to Fed.R.Civ.P. 54(b) with respect to Count II.

**EXHIBIT A**

Federal Tax Assessments and the Limitations Period

| Tax Year | Assessment Date | First Offer in Compromise | Second Offer | Third Offer | Fourth Offer | Bankruptcy Proceeding | Current Deadline (approx.) |
|---|---|---|---|---|---|---|---|
| 1990 * | July 5, 1993 | May 10, 1996 (made) | June 6, 1997 (made) | September 18, 2000 (made) | December 1, 2004 (made) | October 15, 1997 (hearing) | July 15, 2008 |
| | | December 13, 1996 (withdrawn) | October 31, 1997 (rejected) | June 20, 2003 (rejected) | February 11, 2005 (rejected) | November 16, 1998 (discharge granted) | |
| 1991 * | June 28, 1993 | May 10, 1996 (made) | June 6, 1997 (made) | September 18, 2000 (made) | December 1, 2004 (made) | October 15, 1997 (hearing) | July 8, 2008 |
| | | December 13, 1996 (withdrawn) | October 31, 1997 (rejected) | June 20, 2003 (rejected) | February 11, 2005 (rejected) | November 16, 1998 (discharge granted) | |
| 1992 | February 27, 1995 | May 10, 1996 (made) | June 6, 1997 (made) | September 18, 2000 (made) | December 1, 2004 (made) | October 15, 1997 (hearing) | March 9, 2010 |
| | | December 13, 1996 (withdrawn) | October 31, 1997 (rejected) | June 20, 2003 (rejected) | February 11, 2005 (rejected) | November 16, 1998 (discharge granted) | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1993 | February 27, 1995 | May 10, 1996 (made) | June 6, 1997 (made) | September 18, 2000 (made) | December 1, 2004 (made) | October 15, 1997 (hearing) | March 9, 2010 |
| | | December 13, 1996 (withdrawn) | October 31, 1997 (rejected) | June 20, 2003 (rejected) | February 11, 2005 (rejected) | November 16, 1998 (discharge granted) | |
| 1995 | November 18, 1996 | | June 6, 1997 (made) | September 18, 2000 (made) | December 1, 2004 (made) | October 15, 1997 (hearing) | April 25, 2011 |
| | | | October 31, 1997 (rejected) | June 20, 2003 (rejected) | February 11, 2005 (rejected) | November 16, 1998 (discharge granted) | |
| 1996 | March 31, 1997 | | June 6, 1997 (made) | September 18, 2000 (made) | December 1, 2004 (made) | October 15, 1997 (hearing) | September 7, 2012 |
| | | | October 31, 1997 (rejected) | June 20, 2003 (rejected) | February 11, 2005 (rejected) | November 16, 1998 (discharge granted) | |
| 1997 | September 11, 2000 | | September 18, 2000 (made) | December 1, 2004 (made) | | | August 23, 2013 |
| | | | June 20, 2003 (rejected) | February 11, 2005 (rejected) | | | |

| | | | | |
|---|---|---|---|---|
| 1998 | January 3, 2000 | September 18, 2000 (made) | December 1, 2004 (made) | December 15, 2012 |
| | | June 20, 2003 (rejected) | February 11, 2005 (rejected) | |
| 1999 | September 11, 2000 | September 18, 2000 (made) | December 1, 2004 (made) | August 23, 2013 |
| | | June 20, 2003 (rejected) | February 11, 2005 (rejected) | |
| 2001 | October 14, 2002 | December 1, 2004 (made) | | December 24, 2012 |
| | | February 11, 2005 (rejected) | | |
| 2002 | March 15, 2004 | December 1, 2004 (made) | | May 25, 2014 |
| | | February 11, 2005 (rejected) | | |
| 2003 | August 2, 2004 | December 1, 2004 (made) | | October 12, 2014 |
| | | February 11, 2005 (rejected) | | |

| 2004 | October 10, 2005 | | | | | October 10, 2015 |
|---|---|---|---|---|---|---|
| | | | | | | |

* The Assessments for Tax Years 1990 and 1991 are no longer at issue as to Count II because the United States has recorded releases of its liens for those years.

**EXHIBIT B**

Notice of Federal Tax Liens (NOTFL) and the Required Refiling Period 1/

| Tax Year | Assessment Date | Required Refiling Deadline | NOTFL Refiling Date | New Required Refiling Deadline |
|---|---|---|---|---|
| 1990* | July 5, 1993 | August 4, 2003 | October 23, 2002 | August 4, 2013 |
| 1991* | June 28, 1993 | July 28, 2003 | October 23, 2002 | July 28, 2013 |
| 1992 | February 27, 1995 | March 29, 2005 | November 22, 2004 | March 29, 2015 |
| 1993 | February 27, 1995 | March 29, 2005 | November 22, 2004 | March 29, 2015 |
| 1995 | November 18, 1996 | December 18, 2006 | | |
| 1996 | March 31, 1997 | April 30, 2007 | | |
| 1997 | September 18, 2000 | October 11, 2010 | | |
| 1998 | January 3, 2000 | February 2, 2010 | | |
| 1999 | September 11, 2000 | October 11, 2010 | | |
| 2001 | October 14, 2002 | November 13, 2012 | | |
| 2002 | March 15, 2004 | April 14, 2014 | | |
| 2003 | August 2, 2004 | September 1, 2014 | | |
| 2004 | October 10, 2005 | November 9, 2015 | | |

1/ The government filed suit against the Berks on August 17, 2006, postponing as of that date all deadlines until the resolution of this action.

* The Assessments for Tax Years 1990 and 1991 are no longer at issue as to Count II because the United States has recorded releases of its liens for those years.

EXHIBIT C

Priority of the Creditors' Claims

| Party | Tax Year | Assessment Date | Statutory Notice Date | Balance of Tax Liabilities** |
|---|---|---|---|---|
| Ocwen (HSBC) | | Mortgage recorded on 8/21/92 | | $347,640.95*** |
| United States | 1991* | June 28, 1993 | June 28, 1993 | $124,755.47 |
| United States | 1990* | July 5, 1993 | July 5, 1993 | $39,029.36 |
| United States | 1992 | February 27, 1995 | February 27, 1995 | $145,634.27 |
| United States | 1993 | February 27, 1995 | February 27, 1995 | $109,368.82 |
| United States | 1995 | November 8, 1996 | November 8, 1996 | $7,809.46 |
| United States | 1996 | March 31, 1997 | March 31, 1997 | $64,496.14 |
| Commonwealth | 1996 | April 15, 1997 | | $9,863.41 |
| Commonwealth | 1990 | February 4, 1998 | | $21,533.40 |
| Commonwealth | 1991 | February 4, 1998 | | $18,656.28 |

| | | | | |
|---|---|---|---|---|
| Commonwealth | 1992 | February 4, 1998 | | $18,558.93 |
| Commonwealth | 1993 | February 4, 1998 | | $13,693.48 |
| Commonwealth | 1994 | February 4, 1998 | | $14,912.40 |
| Commonwealth | 1995 | February 4, 1998 | | $13,653.34 |
| Commonwealth | 1997 | March 22, 1999 | | $8,397.40 |
| Commonwealth | 1998 | December 7, 1999 | | $9,005.49 |
| United States | 1998 | January 3, 2000 | January 3, 2000 | $60,967.85 |
| United States | 1997 | September 11, 2000 | September 11, 2000 | $33,259.58 |
| United States | 1999 | September 11, 2000 | September 11, 2000 | $39,840.36 |
| Commonwealth | 1999 | November 28, 2000 | | $7,808.20 |
| Commonwealth | 2001 | September 13, 2002 | ·· | $4,367.29 |
| United States | 2001 | October 14, 2002 | October 14, 2002 | $32,882.15 |
| Commonwealth | 2002 | February 27, 2004 | | $8,512.54 |

| United States | 2002 | March 15, 2004 | March 15, 2004 | $52,277.62 |
| Commonwealth | 2003 | July 2, 2004 | | $6,782.15 |
| United States | 2003 | August 2, 2004 | August 2, 2004 | $45,166.64 |
| United States | 2004 | October 10, 2005 | October 10, 2005 | $23,977.39 |
| Commonwealth | 2004 | December 2, 2005 | | $5,067.66 |

* The Assessments for Tax Years 1990 and 1991 are no longer at issue as to Count II because the United States has recorded releases of its liens for those years.

** All federal tax balances are as of January 31, 2007 as set forth in the Carroll Affidavit

¶ 2. All Commonwealth balances are as of November 30, 2006 and are found in the exhibits attached to the Mustacio Affidavit.

*** Amount due Ocwen under Note and Mortgage as of 1/9/07. (Hawk Aff. ¶ 7.)